**BURGER KING CORPORATION,**
**Plaintiff/Counterdefendant,**

v.

**C.R. WEAVER and M–W–M, Inc., a Montana corporation, Defendants/Counterplaintiffs.**

**No. 90–2191–Civ.**

United States District Court,
S.D. Florida.

May 22, 1992.

---

Barry Meadow, Miami, Fla., and Richard Dzivi, Great Falls, Mont., for plaintiff.

Romney C. Rogers, Ft. Lauderdale, Fla., for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon Plaintiff Burger King Corporation's Motion for Summary Judgment on Counterclaim (all sixteen counts), file dated December 6, 1991.

The Court has considered the Motion, response, reply, affidavits and supplemental written filings, oral argument of counsel, applicable law, and the pertinent portions of the record, and is otherwise fully advised in the premises. For the reasons which follow, we grant Plaintiff's motion in part and deny it in part.

## I. Background

On May 24, 1976, Defendant C.R. Weaver ("Weaver") and two partners entered into a franchise agreement with Plaintiff Burger King Corporation ("BKC"), entitling Weaver to operate a Burger King restaurant (# 1666) on land owned by BKC at 1605 10th Avenue South in Great Falls, Montana, for a period of fifteen years.[1] Weaver paid a franchise fee to BKC, and purchased the furnishings and fixings for the restaurant. In addition, Weaver purchased land adjacent to the restaurant for the purpose of adding a drive-thru feature and a playground, and subsequently remodeled the restaurant at his own expense.

On September 17, 1988, Weaver contracted with BKC to operate a second Burger King restaurant (# 6158) located at 211 Northwest Bypass in Great Falls, Montana, for a period of twenty years. Weaver paid a franchise fee to BKC, and he funded the construction, furnishings, and fixtures for this restaurant.

On February 20, 1986, Weaver also contracted with BKC to operate a third Burger King restaurant # 4963, located at 130 Idaho West in Kalispell, Montana. Weaver has alleged that he has expended in excess of one million dollars on behalf of all three restaurants to date.

The franchise agreements authorized Weaver to use the Burger King trademarks, service marks, and logos subject to the express provisions and limitations set forth in those agreements. In return, Weaver was required to make payments to BKC for royalties, advertising, rent, and other related expenses.

In September 1989, BKC granted to the Army and Air Force Exchange Service ("AAFES") the right to operate a Burger King restaurant on Malmstrom Air Force Base ("Malmstrom") adjacent to the city of Great Falls, Montana. This right was granted pursuant to a world-wide contract entered into between AAFES and BKC in 1984, which allows AAFES to unilaterally choose the sites or bases on which to place Burger King restaurants.

BKC's placement of a franchise at Malmstrom allegedly caused revenues and profits at both of Weaver's Great Falls restaurants (# 1666 and # 6158) to decline. Perceiving this to be a violation of the two franchise agreements, Weaver ceased to pay all rents, fees, and related charges owing to BKC under those two agreements. On September 20, 1990, BKC notified Weaver in writing that he was in default under the franchise agreements for failure to pay, and demanded payment of all sums due within thirty days for restaurant # 1666 and within ten days for restaurant # 6158.[2]

On the following day, BKC filed a complaint in this Court against Defendants C.R. Weaver and M–W–M, Inc., for breach of the franchise agreements and breach of lease.[3] Thereafter, on November 14, 1990, Weaver initiated his own action against BKC in the United States District Court for Montana, alleging, *inter alia,* breach of franchise, breach of covenant of good faith and fair dealing, and violation of the Montana Unfair Trade Practices Act. That lawsuit was subsequently transferred to this Court as a counterclaim to BKC's action.

---

**1.** On January 15, 1981, Weaver purchased all right, title, and interest of his then partners in the restaurant. At some point, this interest was assigned, with BKC's consent, to M–W–M Inc., a company wholly-owned by Weaver.

**2.** Subsequently, on December 7, 1990, after Weaver had failed to make the payments demanded under the notices of default, Weaver was specifically informed by written notice that

the franchise agreements and lease agreement were officially terminated.

**3.** Plaintiff thereafter amended its complaint to allege violations of sections 32 and 43 of the Lanham Act, common law trademark and service mark infringement, and unfair competition.

Weaver's counterclaim contains sixteen counts, twelve of which seek damages for five separate causes of action as to franchises # 6158 and # 1666. The counterclaim also contains three counts alleging breach of contract and constructive termination of franchise in connection with the third franchise operated by Weaver, restaurant # 4963 in Kalispell, Montana.[4] BKC has moved for summary judgment as to all sixteen counts of Weaver's counterclaim.

## II.  Analysis

In a motion for summary judgment, the party moving for summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, admissions, and affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is satisfied, however, the non-moving party, if it bears the burden of proof at trial on a dispositive issue, *must* go beyond the pleadings and must demonstrate by affidavit or otherwise that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. Even if there is no genuine issue as to any material fact, the moving party must also persuade the Court that it is entitled to judgment as a matter of law.

### A.  Applicable Law

Both franchise agreements provide that they be governed and construed in accordance with the laws of the State of Florida. "When the parties to a contract have indicated their intention as to the law which is to govern, it [contract] will be governed in accordance with the intent of the parties." *Department of Motor Vehicles v. Mercedes-Benz of North America, Inc.*, 408 So.2d 627, 629 (Fla. 2nd DCA 1981). Significantly, neither party has offered any evidence of fraud or unequal bargaining power which would undermine the validity of the choice of law provisions. As such,

the parties' choice of Florida law will be respected. *See generally Forzley v. AVCO Corp. Electronics Div.*, 826 F.2d 974, 978–79 (11th Cir.1987).

### B.  Territorial Rights?

The franchise agreements for restaurants # 1666 and # 6158 differ in their respective treatment of the franchisee's "territorial rights." In particular, the franchise agreement for restaurant # 1666 contains no language specifically directed at the territorial or geographical parameters of the agreement. That is, the agreement makes no specific mention of either party's "territorial rights." Nonetheless, BKC has identified several sections of the franchise agreement for restaurant # 1666 which, it argues, clearly establish that Weaver's right to operate this franchise is for the "site specified." (*See* Preamble, §§ II(A), III).

The franchise agreement for restaurant # 6158, on the other hand, has language which appears to be specifically directed at addressing the respective "territorial rights" of the parties. Under the heading "Franchise Grant: Term and Location," the agreement provides that "[t]his franchise is for the specified location only and does not in any way grant or imply any area, market or territorial rights proprietary to franchisee."

The facts of this case are, for the most part, undisputed. Indeed, for those counts of the counterclaim relating to restaurants # 1666 and # 6158, the questions of law facing the Court revolve around one undisputed fact—the placement of a Burger King restaurant on Malmstrom. Simply stated, this Court must decide whether Weaver has a viable cause of action under Florida law against BKC for the placement of a Burger King restaurant in close proximity to his two restaurants. Or, given the above-referenced language pertaining to territorial rights set forth in the respective agreements, has BKC simply done what it was entitled to do under the two franchise

---

**4.** The sixteenth count seeks injunctive relief to prevent BKC from terminating the franchise

agreement for Restaurant # 1666, whose fifteen year term expired in 1991.

agreements? We now turn to the merits of the counterclaim.

## III. The Merits

### A. Counts 1 & 2: Breach of Franchise (#1666 and #6158)

In Counts 1 and 2, Weaver alleges that BKC breached its "express obligations" under the two franchise agreements by allowing AAFES to operate a Burger King franchise at Malmstrom. Weaver also alleges that BKC breached certain obligations that were "implied" in the contracts. Weaver, however, cites no express provision of either franchise agreement which has been breached. This is not surprising; neither agreement contains *express* language which would prevent BKC from granting anyone the right to operate a competing franchise at Malmstrom.[5]

Furthermore, Weaver's allegation that the agreements also contained implied conditions is merely a different way of saying that the parties are obligated "to cooperate in its performance in 'good faith' to the extent necessary to carry out the purposes of the contract." *Market Street Associates Limited Partnership v. Frey*, 941 F.2d 588, 596 (7th Cir.1991). Importantly, in Counts 3 and 4, discussed *infra*, Weaver alleges that BKC breached its "covenant of good faith and fair dealing." His claim based on breach of implied contract contained in Counts 1 and 2, therefore, is duplicitous and cannot remain.

Accordingly, BKC's Motion for Summary Judgment as to Counts 1 and 2 of Weaver's Counterclaim is GRANTED, and those counts are hereby DISMISSED.

### B. Counts 3 & 4: Breach of Covenant of Good Faith and Fair Dealing

■ Florida law recognizes, and BKC does not dispute, that every contract carries with it the implied provision that the parties act in accordance with principles of good faith and fair dealing. *See Green*

*Companies v. Kendall Racquetball*, 560 So.2d 1208, 1210 (Fla. 3d DCA 1990); *First Nationwide Bank v. Florida Software Services, Inc.*, 770 F.Supp. 1537 (M.D.Fla. 1991); *see also Dunkin' Donuts of America, Inc. v. Minerva, Inc.*, 956 F.2d 1566 (11th Cir.1992) (applying Massachusetts law). The scope of the implied covenant of good faith and fair dealing is necessarily limited by the express language of the contract. *Coira v. Florida Medical Association, Inc.*, 429 So.2d 23, 24 (Fla. 3d DCA 1983). Conduct which is expressly authorized by a franchise agreement, for example, cannot be said to breach the implied covenant.

■ In Counts 3 and 4, Weaver alleges that BKC breached the implied covenant of good faith and fair dealing by allowing AAFES to operate a Burger King restaurant at Malmstrom, in direct competition with his two franchises in Great Falls, Montana. This conduct, Weaver, alleges, constitutes the very "cannibalization" and "encroachment" against which Burger King had developed specific internal policies and procedures.[6]

Relying on the above-described "territorial rights" language contained in the two agreements, BKC argues vigorously that it specifically contracted for the right to place a franchise at any location, regardless of the cannibalization effect on another BKC franchisee. BKC maintains that the terms of the agreements authorize the conduct which, Weaver asserts, breaches the implied covenant of good faith and fair dealing. Had Weaver desired an "exclusive territory" upon which BKC could not encroach, BKC argues, he should have negotiated for such a term. Finally, BKC contends that this Court should not overstep its bounds and "rewrite" the franchise agreements to include terms not agreed to at the time the contracts were signed.

While this Court acknowledges that the existence of a "territorial rights" clause which *affirmatively* grants to BKC the

5. The difference between agreements #1666 and #6158 with respect to "territorial rights" is of no relevance to counts 1 and 2.

6. Among other things, BKC would survey the market, conduct impact studies, and provide protesting franchisees with data relating to these studies.

right to place a Burger King restaurant at any location would foreclose a cause of action based on the implied covenant, we do not believe that the two agreements in question contain such a clause. First, the "site specific" clauses contained in franchise agreement # 1666, even taken together, hardly constitute a definitive declaration of the parties' respective "territorial rights." More significant, these clauses cannot be said to expressly authorize BKC to place a Burger King restaurant at any location it wishes.

Second, the "territorial rights" clause of franchise agreement # 6158, which "does not in any way grant or imply any area, market or territorial rights proprietary to franchisee," similarly cannot be said to affirmatively authorize the placement of a BKC franchise on any site. In this regard, our holding is in accord with the decision in *Scheck v. Burger King Corporation*, 756 F.Supp. 543, 549 (S.D.Fla.1991). In *Scheck*, Judge Hoeveler, construing the same "territorial rights" clause, held that the express denial of an exclusive territorial right to the franchisee "does not necessarily imply a wholly different right to Burger King—the right to open other proximate franchises at will regardless of their effect on the Plaintiff's operations."[7] Judge Hoeveler reasoned that a franchisee is entitled to expect that the franchisor "will not act to destroy the right of the franchisee to enjoy the fruits of the contract." 756 F.Supp. at 549.

In so holding, we necessarily reject the Fourth Circuit's unpublished opinion in *Fickling v. Burger King Corporation*, 843 F.2d 1386 (4th Cir.1988) (Table). In *Fickling*, the franchisees alleged that BKC had breached its implied covenant of good faith and fair dealing under Florida law by granting two franchises to AAFES at Fort Bragg, North Carolina. The Fourth Circuit affirmed the dismissal of this claim and concluded, without elaboration, that there was no genuine issue regarding BKC's failure to comply with the enforceable unambiguous terms of the contract. *See also*

*Burger King v. Kellog*, 89–2433–CIV–KING (S.D.Fla. filed Sept. 7, 1990) (finding no cause of action under implied covenant for alleged misuse of advertising funds).

We believe that to construe the franchise agreements in such a fashion would run afoul of the principle that a contract contains such implied conditions as are necessary to make sense of the contract. *See generally Market Street Associates Limited Partnership v. Frey*, 941 F.2d 588, 596 (7th Cir.1991). Taken to its logical extreme, BKC's construction of the franchise agreements would entitle it to set up a competing franchise *next door* to an existing franchise the day after the existing franchise had opened for business. If that were the plain and intended meaning of the "territorial rights" language contained in the two franchise agreements, this Court entertains serious doubts about whether a rational franchisee would ever enter into a franchise agreement with BKC.

■ At best, the "territorial rights" language used in franchise agreement # 6158 is reasonably susceptible to different constructions. Therefore, this court may consider extrinsic matters to explain and elucidate the ambiguous language. *See Friedman v. Virginia Metal Products Corp.*, 56 So.2d 515, 517 (Fla.1952); *Vienneau v. Metropolitan Life Ins. Co.*, 548 So.2d 856 (Fla. 4th DCA 1989). BKC's longstanding policy against encroachment and cannibalization (*See* BKC's Trade Area/Encroachment Policies and Amendments) is one such matter that weighs heavily against BKC's construction of the "territorial rights" language. The course of dealings between Weaver and BKC prior to the 1988 signing of franchise agreement # 6158 also militates against BKC's interpretation.

In sum, the "territorial rights" language contained in the franchise agreements cannot be viewed as *expressly authorizing* the conduct engaged in by BKC. Importantly, we do not conclude that BKC has breached the covenant of good faith and fair dealing—that is for the jury to decide. We simply hold that the express language of

---

**7.** Presently pending before Judge Hoeveler in *Scheck* is a motion for reconsideration of his

denial of summary judgment on the implied covenant counts.

the franchise agreements does not preclude Weaver from maintaining a cause of action based on the implied covenant of good faith and fair dealing. Because issues remain regarding whether BKC actually breached the implied covenant of good faith and fair dealing, BKC's motion for summary judgment as to Counts 3 and 4 is hereby DENIED.

### C. Counts 5 & 6: Montana Unfair Trade Practices Act

Weaver alleges that the BKC violated the Montana Unfair Trade Practices Act ("MUTPA") by, among other things, granting AAFES the right to place a Burger King restaurant at Malmstrom. The MUTPA, however, is inapplicable to a lawsuit construed in accordance with the laws of the State of Florida. Therefore, Counts 5 and 6 of Weaver's Counterclaim are hereby DISMISSED.

### D. Counts 7 & 8: Breach of Covenant of Good Faith and Fair Dealing by Tortious Conduct after Breach of Contract

In Counts 7 and 8, Weaver alleges that BKC breached a covenant of good faith and fair dealing by engaging in tortious conduct after it had intentionally breached the franchise agreements. Although difficult to decipher from the face of the Complaint, Weaver appears to allege that BKC has breached a covenant of good faith and fair dealing by failing to make a reasonable settlement offer to Weaver, in contravention of its own internal corporate policy. Weaver insists that BKC has settled claims of this nature, in good faith, with similarly affected franchisees.

Even if liberally viewed as a claim based on tortious breach of contract, this cause of action cannot stand. Florida courts recognize the claim of "tortious breach of contract" in the context of insurance, for example, where the insurer in bad faith fails

to settle an insured's claim. *See e.g. Cardenas v. Miami Dade Yellow Cab Co.*, 538 So.2d 491, 496 n. 4 (Fla. 3rd DCA 1989). This claim based on "tortious breach," however, arises out of a duty to settle that has been imposed, by statute, on insurers. *See* Fla.Stat. § 624.155(1)(b).

BKC had neither a statutory nor a common law duty to settle these claims with Weaver. Moreover, the existence of an internal corporate policy regarding settlement of franchisee claims does not subjugate BKC, as a matter of law, to make a good faith effort to settle each and every claim brought by a franchisee. The same policy considerations which motivated the Florida legislature to impose a "duty to settle" on insurers do not motivate this Court to *create* such a common law duty with respect to franchisors.

Because BKC had no legally cognizable duty to settle this claim in good faith with Weaver, we need not address whether there is a genuine issue of fact as to whether BKC acted in "bad faith." Counts 7 and 8 do not state a cause of action under Florida law, and are therefore DISMISSED.[8]

### E. Counts 9–12: Termination of Franchise Without Cause and "Good Cause"

In Counts 9 through 12, Weaver alleges that his franchises (# 1666 and # 6158) were terminated by notice of termination on December 7, 1990, without good cause and with a lack of good faith. Weaver contends that under the terms of the franchise agreements, BKC could not terminate his franchises as long as performance (food, service, etc.) was satisfactory. Weaver alleges that this wrongful termination has caused the complete destruction of his business, including loss of future earnings. Because Counts 10 and 12 mirror the allegations contained in Counts 9

---

**8.** Although nowhere in his counterclaim does Weaver allege a claim based on tortious interference, had Weaver actually intended that these counts allege such a claim, they still fail. An action for "tortious interference" must allege that a *third-party* wrongdoer interfered in a contractual relationship. *See Dade Enterprises, Inc. v. Wometco Theatres, Inc.*, 119 Fla. 70, 160 So. 209 (1935). Weaver's counterclaim is against BKC, the other signator of the contract, and not against a third party.

and 11, the four counts will be treated together.

BKC maintains that by defaulting on his payments for royalties, advertising, and other expenses, Weaver breached the express terms of the franchise agreement, entitling BKC to terminate. *See* Franchise Agreement # 1666, § 12(A)(2); Franchise Agreement # 6158 § 17(A)(7). BKC notes that Weaver has admitted that he withheld rent, royalty, and advertising payments. BKC argues, therefore, that it certainly was not acting in bad faith in construing the agreements by their very terms, which allow termination upon default.

■ Weaver, by contrast, states that this Court, in its March 22, 1991 Order Denying BKC's Motion for Preliminary Injunction, has "already held that BKC has failed to meet the burden of demonstrating a breach of the Franchise Agreements." This holding, Weaver maintains, forecloses BKC from arguing that it had good cause for terminating the franchise agreements.

Weaver, however, misconstrues the effect of the Court's March 22, 1991 Order. This Court held that for purposes of obtaining a preliminary injunction on its Lanham Act claim, *BKC* had the burden of showing a "substantial likelihood of success" on its breach of contract claim. This Court simply did not believe that BKC had met its burden *at that hearing*, and that BKC had not shown, to the satisfaction of this Court, "that termination was proper *so as to justify a preliminary injunction.*"[9]

■ The burden of proof on a motion for summary judgment is different than that for a preliminary injunction. Specifically, by demonstrating that Weaver withheld rent and royalty payments in violation of specific provisions of the franchise agreements, BKC has satisfied its initial burden, as the moving party, of identifying those portions of the pleadings and supporting materials which demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Weaver,

as the non-moving party bearing the burden of proof on the dispositive issue at trial, must demonstrate to this Court, *by competent evidence*, the existence of a genuine factual dispute for trial. *Id.*

Weaver has failed to do so. The only evidence which Weaver cites as creating a factual issue on the wrongful termination claim is a settlement offer made by BKC to Weaver on August 21, 1990. Weaver argues that this settlement offer is evidence that he believed that BKC had consented to Weaver's withholding of royalties and rents. Weaver contends that by terminating his franchises after consenting to the withholding of payment, BKC is therefore liable for wrongful termination.

This Court has repeatedly held, however, that evidence of that settlement offer would be inadmissible at trial and "not relevant for the purposes of establishing BKC's liability in this lawsuit." *See* Order of March 22, 1991. Weaver has come forward with no other competent evidence to support his claim for wrongful termination and to satisfy his burden on summary judgment.

Accordingly, BKC's motion for summary judgment as to Counts 9, 10, 11, and 12 is GRANTED, and those counts are hereby DISMISSED.

**F. Counts 13 & 14: Breach of Franchise Agreement (# 4963) and Constructive Termination of Franchisee**

Counts 13 and 14 allege that BKC breached the franchise agreement for restaurant # 4963 and that the agreement was constructively terminated by BKC's failure and refusal to perform its duties pertaining to merchandising, marketing, and sales promotion. BKC argues that, to its knowledge, it has not suspended any of these services, and points to its answer to interrogatories propounded to it by Weaver as evidence thereto.

---

**9.** On the same date that this Court denied BKC's motion for a preliminary injunction, this Court entered another Order requiring Weaver to deposit monthly, into a stipulated escrow account, all monies due and owing for rent, royalties, and advertising.

The only evidence which Weaver cites in support of these claims is the affidavit of the Manager of restaurant #4963, Larry Wilson, who testified that BKC has, "at times," refused to honor certain requests regarding promotional materials. Weaver does not identify which provision of the contract has been breached by BKC, nor does he outline the nature of Weaver's requests for promotional materials and other documents which were allegedly refused.

Stated simply, Weaver has come forward with no competent evidence to create a genuine issue of fact as to whether the franchise agreement for restaurant #4963 was either breached or constructively terminated. Accordingly, BKC's motion for summary judgment as to Counts 13 and 14 is GRANTED, and those counts are hereby DISMISSED.

*G. Counts 15 & 16: Injunctive Relief to Prevent Termination of Franchises #4963 and #1666*

 In Counts 15 and 16, Weaver requests that this Court grant injunctive relief to prevent BKC from terminating the franchise agreements for restaurant #4963 and restaurant #1666. Weaver also seeks to have this Court require BKC to issue a successor franchise agreement to Weaver for restaurant #1666.

The injunction prayed for by Weaver is a request for a decree of specific performance from this Court. Florida law does not recognize the remedy of specific performance for a franchise agreement, since such an agreement is viewed as a contract for personal services. *See Burger Chef Systems, Inc. v. Burger Chef of Fla., Inc.,* 317 So.2d 795, 797–98 (Fla. 4th DCA 1975); *see also North Am. Financial Group, Ltd. v. S.M.R. Enterprises, Inc.,* 583 F.Supp. 691, 699 (N.D.Ill.1984). As such, Counts 15 and 16 cannot stand, and are hereby DISMISSED.

### Conclusion

For the foregoing reasons, it is ORDERED and ADJUDGED as follows:

1) BKC's Motion for Summary Judgment as to Counts 1, 2, 9, 10, 11, 12, 13, and 14 of Weaver's Counterclaim is hereby GRANTED. Those counts are hereby DISMISSED with PREJUDICE.

2) Counts 5, 6, 7, 8, 15, and 16 of Weaver's Counterclaim are hereby DISMISSED for failure to state a claim cognizable under Florida law.

3) BKC's Motion for Summary Judgment as to Counts 3 and 4 of Weaver's Counterclaim is hereby DENIED.

DONE AND ORDERED.