636 So.2d 1364 (1994)
Fredric M. BERNSTEIN, Appellant/Cross-Appellee,
v.
Richard C. TRUE, and Maureen O'Sullivan, Appellees/Cross-Appellants, and
Charlie Luckie, Jr., as personal representative of the Estate of George Zicheck; Stephanie Zicheck, and Thomas F. True, III, Appellees.
No. 92-2168.
District Court of Appeal of Florida, Fourth District.
May 4, 1994.
Rehearing Denied June 14, 1994.
*1365 Michael B. Rappel, of Michael B. Rappel, P.A., Tamarac, and Steven M. Katzman, of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., West Palm Beach, for appellant, cross-appellee.
Edward Campbell, of Dewrell & Campbell, Fort Walton Beach, for appellee, cross-appellant Richard C. True.
Charlie Luckie, Jr., of McGee, Luckie & Dayton, P.A., Brooksville, for appellees Zicheck.
RAMIREZ, JUAN, Jr., Associate Judge.
This is an appeal from a controversy surrounding oceanfront real estate located in Juno Beach. We affirm in part and reverse in part.
On May 19, 1989, the Zichecks entered into a sale purchase agreement with appellant *1366 Bernstein "as Trustee, for EHA Normandy Trust, as Purchaser." The purchase price was three million dollars. The purchaser was to place $300,000 in escrow and the closing was to occur thirty days after the final site approval for a multi-story townhouse project. Seller was obligated to cooperate with purchaser's efforts by providing information necessary for development of the use plans. Under the agreement, Bernstein had ninety days to secure final site plan approval, but as long as events were proceeding satisfactorily, appellant could extend the approval period for six successive thirty day periods by depositing additional sums of $10,000 for each thirty day extension.
On August 21, 1989, Bernstein entered into a land trust agreement with appellee Richard True and a Thomas F. True, III, under which appellant assigned the sale and purchase agreement to the trust. In return, Bernstein received a twenty percent interest in the property and the project. The Trues were obligated to make all the payments necessary for the ownership, development, operation, and maintenance of the property.
After obtaining three extensions, the purchasers started experiencing difficulties. Richard True removed the trustee, placed himself in that position, and retained an attorney to handle the purchase. The Zichecks, Trues and their counsel held several meetings and exchanged letters, some with and some without Bernstein's participation. After the last extension had expired on November 19, 1989, the Zichecks stated that they would excuse the delay if both November and December extension payments totaling $20,000 were made by December 19, 1989; otherwise they would consider the contract terminated.
Sometime thereafter the Zichecks and the Trues entered into negotiations for a second agreement on the same property. After the deadline expired, they executed a second agreement on January 23, 1990, with Richard True as trustee purchasing the property for the same price of three million dollars and using the same $300,000 already in escrow as down payment. This time the agreement specified a closing date of July 20, 1990, which finally took place on October 23, 1990. Bernstein subsequently sued Zichecks, the Trues and the real estate broker.
Appellant's claim against the Zichecks was based on breach of contract and tortious interference with an advantageous business relationship. At the conclusion of the jury trial, the court directed a verdict in favor of the Zichecks. We affirm this ruling.
Bernstein's claim was based on an alleged breach of an implied covenant of good faith. Champagne-Webber, Inc. v. City of Fort Lauderdale, 519 So.2d 696 (Fla. 4th DCA 1988). But the Zichecks cannot breach a contract that had expired, and on November 19, 1989, the purchasers had technically breached the contract. Even if we consider December 19, 1989, as the termination date, there is no evidence that the Zichecks acted in bad faith in trying to salvage the transaction. Their acceptance of late payments was not a waiver under the contract as the agreement stated that a waiver for one purpose was not a waiver for other purposes or events. The evidence established that the Zichecks were eminently fair with the purchasers and any mischief was confined to the purchasers' side of the transaction.
Bernstein next claimed that the Zichecks tortiously interfered with appellant's land trust agreement with the Trues. Tortious interference involves four elements: the existence of a business relationship, knowledge of the relationship by the party alleged to have interfered, an intentional and unjustifiable interference with the business relationship, and damage to the plaintiff as a result. McCurdy v. Collis, 508 So.2d 380 (Fla. 1st DCA), rev. denied, 518 So.2d 1274 (Fla. 1987). There must be a relationship in existence at the time of any alleged interference.
The purpose of the land trust agreement was thwarted by the termination of the sale and purchase agreement. The duration of a trust is measured by its object. Clement v. Charlotte Hospital Ass'n, 137 So.2d 615 (Fla. 2d DCA 1962). Thus, the trust ceased to exist when its purpose had been frustrated by the failure of the purchase agreement. This agreement expired in November, at best December, 1989. The *1367 Zichecks' attempt to revive the transaction by entering into a new contract on January 23, 1990, cannot be seen as interference with any viable business relationship.
Even though a valid contract is not necessary for a claim of tortious interference, Bernstein failed to prove that he had any legal rights pursuant to any joint venture or partnership agreement, independent of the land trust agreement, with which the Zichecks interfered. Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc., 361 So.2d 769 (Fla. 4th DCA 1978), cert. denied, 368 So.2d 1370 (Fla. 1979).
Bernstein obtained a jury verdict against his real estate broker, appellee Maureen O'Sullivan, in the sum of $35,000, for breach of fiduciary duty. The trial judge entered judgment for defendant notwithstanding the verdict. We also affirm this ruling.
Taking the evidence in the light most favorable to appellant, we have at best an attempt by the broker to salvage her fee. Bernstein had entered into an agreement with Ms. O'Sullivan's employer, Sutter & Nugent, for the payment of $50,000 in commission. When the original agreement began to unravel in December, 1989, O'Sullivan kept Bernstein informed and when the closing eventually took place approximately ten months later, she was paid the original commission agreed to by Bernstein.
There is nothing to indicate that her involvement in the second agreement caused the first one to fall apart. There is no evidence that O'Sullivan's actions caused the Zichecks not to sell to Bernstein nor did they cause the Trues to purchase the property without including appellant. Even assuming a breach of fiduciary duty, appellant cannot recover without proof of causation. See Schmidt v. Bryant, 312 So.2d 209 (Fla. 1st DCA 1975).
Bernstein obtained a jury verdict against the Trues in the sum of $950,000. Richard True, as cross-appellant, claims that this was not supported by competent evidence. An expert witness testified that at the time appellant assigned his rights under the sale and purchase agreement to the land trust agreement, the property was worth $3,950,000. Thus, on August 21, 1989, Bernstein had a contract worth $950,000, which he assigned to the trust. This is the amount of damages the jury awarded to Bernstein. We affirm the jury verdict.
The final point on appeal is Bernstein's claim for punitive damages against the Trues. The trial judge did not allow this issue to proceed to the jury on the basis that it is within the province of the court to determine whether a jury should consider the issue of punitive damages. In First Interstate Development Corp. v. Ablanedo, 511 So.2d 536 (Fla. 1987), the supreme court stated that proof of fraud sufficient for an award of compensatory damages is enough to create a jury question as to punitive damages. The court reasoned that "intentional misconduct is a necessary element of fraud." Id. at 539. Similarly, this court has stated that "a claim of fraud sufficient to justify a compensatory damage award is also sufficient to support a claim for punitive damages." Rappaport v. Jimmy Bryan Toyota of Fort Lauderdale, Inc., 522 So.2d 1005, 1006 (Fla. 4th DCA 1988); see also Cruise v. Graham, 622 So.2d 37 (Fla. 4th DCA 1993). The jury in this case awarded compensatory damages on the claim of fraud. Therefore, we now reverse and remand so that the issue of punitive damages can be determined by a jury.
AFFIRMED IN PART; REVERSED IN PART.
GUNTHER and STONE, JJ., concur.