**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 96-5438

D.C. Docket No. 90-2191-CIV-MARCUS

BURGER KING CORPORATION,

Plaintiff-Counter-Defendant-Appellee,

versus

C. R. WEAVER; M-W-M, INC.

Defendants-Counter-claimants-Appellants.

Appeal from the United States District Court
for the Southern District of Florida

**(March 9, 1999)**

Before TJOFLAT and DUBINA, Circuit Judges, and SMITH[H], Senior Circuit Judge.

---

[*] Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

SMITH, Senior Circuit Judge:

This dispute arises out of a decision by the Burger King Corporation ("BKC") to license the opening of a competing Burger King® restaurant near two existing Burger King® restaurants operated by C.R. Weaver ("Weaver"). In response to the perceived encroachment, Weaver stopped making his rent and royalty payments to BKC. After settlement discussions failed, BKC sued to recover the amounts it was due under the franchise agreements and Weaver counterclaimed on a variety of grounds. The District Court for the Southern District of Florida granted summary judgment to BKC on all of Weaver's counterclaims, as well as on BKC's claims for breach of contract and trademark infringement. We affirm.

*Facts*

In 1976, Weaver entered into an agreement with BKC that allowed Weaver to lease and operate a Burger King® restaurant owned by BKC in Great Falls, Montana. This restaurant is referred to as the "#1666 franchise."[1] Weaver and BKC entered into another franchise agreement in 1988, allowing Weaver to operate a second Great Falls Burger King® restaurant, this one at a site which he owned. This restaurant is referred to as the "#6158 franchise."

Under the terms of both franchise agreements, Weaver agreed to make monthly royalty payments and advertising contributions to BKC in exchange for, among other things, a license to use the Burger King® trademarks and franchise system at his

---

[1] Later in 1976, Weaver assigned the #1666 franchise agreement and lease to M-W-M, Inc., a corporation controlled by Weaver. For convenience, we will refer to the Appellants collectively as "Weaver."

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

restaurants. Weaver also agreed to make monthly rent payments for the leased #1666 restaurant.

The franchise agreements contain different provisions regarding their geographic scope. The #1666 agreement states that "[t]he premises at which Franchisee shall operate a Burger King® Restaurant are fully described in Exhibit 'A'," which describes a specific location in Great Falls, Montana. The #6158 agreement more explicitly states that "[t]his franchise is for the specified location only and does not in any way grant or imply any area, market, or territorial rights proprietary to FRANCHISEE." Neither agreement places any limitations on the location of future Burger King® franchises.

In 1989, BKC authorized the opening of a Burger King® restaurant (the "Malmstrom Burger King®") at Malmstrom Air Force Base in Great Falls. Weaver viewed the new restaurant as encroaching on the business of his existing restaurants. To Weaver, this encroachment made the authorization of the Malmstrom Burger King® a breach of BKC's obligations under the #1666 and #6158 franchise agreements. In November 1989, one month after the Malmstrom Burger King® opened, Weaver stopped making his rent, royalty, and advertising payments under the #1666 and #6158 franchise agreements.

Weaver met with BKC representatives several times over the next months to resolve the parties' disagreement. Ultimately, Weaver rejected BKC's final settlement offer and on September 21, 1990, BKC filed this suit to collect the amounts due under the franchise agreements.

Weaver counterclaimed on a variety of grounds, including (1) breach of the franchise agreements, (2) breach of the implied covenant of good faith and fair dealing,

---

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

(3) violation of the Montana Unfair Trade Practices Act, and (4) actual and constructive termination of franchise without cause.

*Proceedings Below*

The case below was marked by extensive motions practice and procedural skirmishing. Among its many rulings on the parties' motions, the district court ruled March 27, 1992 that BKC's policies of compensation for encroachment and set-off were not discoverable because Weaver had not shown the relevancy of the sought-after documents. In addition, the district court denied Weaver's requests to amend his complaint on October 13, 1994, June 27, 1995, and October 2, 1995; the court found all three motions barred by undue delay and the latter two motions further barred by futility.

On May 22, 1992, the district court granted summary judgment to BKC on fourteen of Weaver's sixteen counterclaims but refused summary judgment on Weaver's claims of breach of the implied covenant of good faith and fair dealing. Burger King Corp. v. Weaver, 798 F. Supp. 684 (S.D. Fla. 1992). The court held the franchise agreements to be ambiguous on the issue of BKC's freedom to license new Burger King® franchises in the vicinity of Weaver's restaurants because the language in the agreements, limiting Weaver's rights to a specific site, "cannot be said to affirmatively authorize the placement of a BKC franchise on any site." Id. at 689. In accord with Scheck v. Burger King Corp., 756 F. Supp. 543 (S.D. Fla. 1991) ("Scheck I"), the court held that the agreements were ambiguous with regard to territorial rights, and denied summary judgment.

On September 18, 1995, the district court granted BKC's second renewed motion

---

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

4

for summary judgment on Weaver's claims of breach of the implied covenant of good faith.[2] The court held that the Florida courts do not recognize a claim for breach of the implied covenant of good faith and fair dealing absent a breach of an express contractual provision. Since Weaver did not allege that BKC's actions violated any express provision of the franchise agreements, the court held that his claim under the implied covenant of good faith and fair dealing failed as a matter of law. The district court therefore entered summary judgment in favor of BKC on Weaver's remaining counterclaims.

On September 3, 1996, the district court granted summary judgment to BKC on its claims for breach of contract and trademark infringement. The court held that Weaver breached the franchise agreements with BKC by withholding payments, that BKC had not caused or acquiesced in the withholding, and that Weaver infringed BKC's trademarks by using the Burger King® marks after his franchises had been properly terminated. The court entered final judgment for BKC and ordered an accounting of profits.

Weaver timely appealed and asserts five grounds of error. Weaver argues that the district court (1) erred in granting summary judgment to BKC on Weaver's claim for breach of the implied covenant of good faith and fair dealing; (2) erred in granting summary judgment to BKC on Weaver's claim under the Montana Unfair Trade Practices Act without granting leave to amend his complaint to assert a claim under the nearly identical Florida Deceptive and Unfair Trade Practices Act; (3) erred in denying Weaver's motions for leave to amend; (4) erred in ruling that BKC's policies of set-off

---

[2] On May 19, 1994, District Judge Aronovitz recused himself and on May 31, 1994, this case was reassigned to District Judge Marcus.

and compensation for encroachment were not subject to discovery; and (5) erred in granting summary judgment to BKC on its claims for breach of contract and trademark infringement. Weaver also argues that the district court erred in awarding lost profits to BKC.

*Standard of Review*

Our review of a trial court's grant of summary judgment is plenary. Elan Pharm. Research Corp. v. Employers Ins. of Wausau, 144 F.3d 1372 (11th Cir 1998); Hale v. Tallapoosa County, 50 F.3d 1579, 1581 (11th Cir. 1995). We apply the same standard applied by the district court. Rodgers v. Singletary, 142 F.3d 1252 (11th Cir. 1998).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In reviewing a motion for summary judgment, the court must consider all the evidence in the light most favorable to the non-movant. Earley v. Champion Int'l. Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. Clemons v. Dougherty County, Ga., 684 F.2d 1365, 1368-69 (11th Cir. 1982)." Kopleowitz v. Home Ins. Co., 977 F. Supp. 1179, 1184-1185 (S.D. Fla. 1997).

In regard to the asserted errors in the district court's rulings on discovery and leave to amend, our review is limited. These decisions are entrusted to the sound discretion of the trial court and are reviewed only for abuse of discretion. See Fund For

---

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

6

Animals, Inc. v. Rice, 85 F.3d 535, 542 (11th Cir. 1996) ("The standard of review applicable to the district court's decision regarding discovery is the abuse of discretion standard."); Forbus v. Sears Roebuck & Co., 30 F.3d 1402, 1404 (11th Cir. 1994) ("A district court's decision to grant or deny leave to amend is reviewed for abuse of discretion."). To the extent that denial of leave to amend is based on futility, i.e., inadequacy as a matter of law, we review such denial independently. Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A., 83 F.3d 1317, 1323 (11th Cir. 1996) (en banc), vacated on other grounds sub nom Hess v. F.D.I.C., __ U.S. __, 117 S. Ct. 760 (1997).

The trial court's award of lost profits to BKC is also reviewed for abuse of discretion. "The damage provision of the Lanham Act entitles a trademark holder to recover, among other things, the profits earned by a defendant from infringement of the mark. 15 U.S.C.A. § 1117. The Act confers upon the district court a wide scope of discretion to determine the proper relief due an injured party. . . . Review of the trial court's exercise of its discretion is under the abuse of discretion standard." Burger King Corp. v. Mason, 855 F.2d 779, 780-781 (11th Cir. 1988) (footnote omitted).

---

\* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.                7

*Implied Covenant of Good Faith and Fair Dealing*

Under Florida law, the implied covenant of good faith and fair dealing is a part of every contract. County of Brevard v. Miorelli Eng'g, Inc., 703 So. 2d 1049, 1050 (Fla. 1997) ("[E]very contract includes an implied covenant that the parties will perform in good faith."). See also Scheck v. Burger King Corp., 798 F. Supp. 692, 694 (S.D. Fla. 1992) ("Scheck II"); Barnes v. Burger King Corp., 932 F. Supp. 1420, 1437-1438 (S.D. Fla. 1996).

"[G]ood faith means honesty, in fact, in the conduct of contractual relations." Harrison Land Dev., Inc. v. R & H Holding Co., Inc., 518 So. 2d 353, 355 (Fla. Dist. Ct. App. 1988). "[A] party's good-faith cooperation is an implied condition precedent to performance of a contract; where that cooperation is unreasonably withheld, the recalcitrant party is estopped from availing himself of his own wrong doing." Bowers v. Medina, 418 So. 2d 1068, 1069 (Fla. Dist. Ct. App. 1982).

The applicability of the implied covenant of good faith in the context of franchise encroachment disputes has generated considerable disagreement in the courts. See, e.g., Kathryn Lea Harman, Comment, The Good Faith Gamble in Franchise Agreements: Does Your Implied Covenant Trump My Express Term?, 28 Cumb. L. Rev. 473 (1998) (collecting federal cases and concluding that "[c]ourts have not been consistent in determining what constitutes a breach of the covenant of good faith and fair dealing in the context of franchises." Id. at 474.). Indeed, consistency is hard to find even within an individual judicial district. In the Southern District of Florida, cases having very similar facts have come to very different conclusions. Compare Scheck I, 756 F. Supp. at 549 (holding that action for breach of implied covenant is a jury issue), and Scheck II,

---

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.                8

798 F. Supp. at 695-696 (same), with Burger King Corp. v. Holder, 844 F. Supp. 1528, 1530 (S.D. Fla. 1993) (holding that action for breach of implied covenant is barred as a matter of law), and Barnes, 932 F. Supp. at 1439 (same).

Our role is to determine what position the Florida courts would take on this issue. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). Although the Florida Supreme Court has not directly addressed the issue, the reported cases suggest that the Florida courts would not recognize an action for breach of the implied covenant on the facts of this case.

The Florida District Courts of Appeal have held unequivocally that the rights conferred by the implied covenant of good faith and fair dealing are limited. The Florida appellate courts recently held that an action for breach of the implied covenant of good faith cannot be maintained in the absence of breach of an express contract provision. Hospital Corp. of America v. Florida Med. Ctr., Inc., 710 So. 2d 573, 575 (Fla. Dist. Ct. App. 1998). The Hospital Corp. of America court held that where a contract had been fully performed by one party (because the sole remaining provision was an unlawful restraint of trade), the implied covenant of good faith could not provide a cause of action. "With respect to [a] breach of an implied duty of good faith, a duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements. See Bernstein v. True, 636 So. 2d 1364 (Fla. 4th DCA 1994) (covenant of good faith not actionable where contract not enforceable)." Id.

In Bernstein v. True, 636 So. 2d 1364 (Fla. Dist. Ct. App. 1994), the court refused

---

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

9

to recognize a cause of action for breach of the implied covenant where the contract had expired, holding that "the [defendants] cannot breach a contract that had expired." Id. at 1366. The court refused to consider what obligations the parties may have had under the implied covenant even though they had no express obligations under the expired contract. Bernstein therefore suggests that breach of an express provision is necessary to ground a claim for breach of the implied covenant.[3]

The Florida appellate courts have also held that "[t]he implied obligation of good faith cannot be used to vary the terms of an express contract." City of Riviera Beach v. John's Towing, 691 So. 2d 519, 521 (Fla. Dist. Ct. App. 1997). In Riviera Beach, "the contract explicitly absolved the city of responsibility and liability" for vehicles not owned by the city; thus, the implied covenant of good faith could not be relied on to recover the cost of towing a car not owned by the city. Id. Similarly, the Florida courts have held that the good faith obligation of the Uniform Commercial Code "may not be imposed to override express terms in [a] contract." Flagship Nat'l Bank v. Gray Distrib. Sys., Inc., 485 So. 2d 1336, 1340 (Fla. Dist. Ct. App. 1986).

Thus, the Florida courts have refused to allow a cause of action for breach of the implied covenant of good faith and fair dealing under two circumstances. First, where the party alleged to have breached the implied covenant has in good faith performed all of the express contractual provisions. See Hospital Corp. of America, 710 So. 2d at 575; Bernstein, 636 So. 2d at 1366. Second, where the implied duty of good faith alleged to have been breached would vary the express terms of the contract. See Riviera Beach,

_____

[3] The Florida appeals courts have also refused to recognize the implied covenant as a viable cause of action in the at-will employment context. Kelly v. Gill, 544 So. 2d 1162 (Fla. Dist. Ct. App. 1989). Since an at-will employee can be terminated at the will of either party, this also suggests that the Florida courts do not recognize breach of the implied covenant in the absence of breach of an express contract provision.

_____

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.                    10

691 So. 2d at 521; <u>Flagship Nat'l Bank</u>, 485 So. 2d at 1340. Under Florida law, therefore, the implied covenant of good faith and fair dealing confers limited rights. As this court has previously stated, "the 'covenant' is not an independent contract term. It is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms <u>de facto</u> when performance is maintained <u>de jure</u>." <u>Alan's of Atlanta, Inc. v. Minolta Corp.</u>, 903 F.2d 1414 (11th Cir. 1990) (applying Georgia law) (citations omitted).

We have considered the reasoning of <u>Scheck I</u> and <u>Scheck II</u> but find it unconvincing. The <u>Scheck</u> court relied on <u>Coira v. Florida Med. Ass'n</u>, 429 So. 2d 23 (Fla. Dist. Ct. App. 1983), for its holding that Florida law recognizes the implied covenant of good faith as an independent cause of action. <u>See</u> <u>Scheck II</u>, 798 F. Supp. at 695: "The Court also remains confident that Florida law recognizes an independent cause of action for breach of this implied covenant of good faith. <u>See, e.g.</u>, <u>Coira</u>, 429 So. 2d at 23 (in finding that 'there are no material issues of fact concerning the plaintiff's claim that defendant insurer breached' the implied covenant of good faith, court implicitly makes clear that a cause of action for breach of the covenant does exist.)"

We have reviewed the <u>Coira</u> decision and find the <u>Scheck</u> court's confidence to be misplaced. The <u>Coira</u> court affirmed summary judgment granted to the defendant in that case, holding that the facts could not support an action for breach of the implied covenant. The <u>Coira</u> court's entire discussion of the implied covenant is as follows:

> [A]lthough we recognize that an implied covenant of good faith and fair dealing inheres in medical malpractice insurance contracts, as it does in contracts in general, we hold that there are no material issues of fact concerning the plaintiffs' claim that the defendant insurer breached such a covenant. This is so because: (a) with respect to Dr. Coira, his original

> policy expired and the insurer had neither a duty to renew the policy, nor an obligation to issue a new one, and (b) with respect to Dr. Davidson, any bad faith motives for cancelling his policy are immaterial where it is not alleged that these motives conflict with the public policy of the state and where the contract of insurance provides that either party may cancel it upon furnishing proper notice.

Coira, 429 So. 2d at 23-24 (citations omitted).  The Coira court thus held that no action for breach of the implied covenant could be maintained because the plaintiffs had not alleged any breach of express duties by the defendant insurer; Coira is therefore consistent with Hospital Corp. of America, 710 So. 2d at 575, and Bernstein, 636 So. 2d at 1366.  Coira does not suggest, explicitly or implicitly, that the Florida courts recognize breach of the implied covenant of good faith as an independent cause of action.

The reasoning of Scheck I and Scheck II is also unconvincing logically.  The Scheck court held that the franchisee had a cause of action, even though the franchise agreement provided no right to exclusive territory, because BKC had not expressly reserved the right to license additional Burger King® restaurants nearby.  The flaw in this reasoning is that right and duty are different sides of the same coin; if one party to a contract has no right to exclusive territory, the other party has no duty to limit licensing of new restaurants.

The rights and duties of the parties to a franchise agreement are created by the agreement.  In the absence of an agreement, neither party has a duty to perform and neither has a right against the other.  Thus, in this case, if Weaver's franchise agreement did not grant him a right to an exclusive territory, BKC incurred no duty to refrain from licensing new franchises in the area.  It is undisputed that Weaver's franchise agreements did not grant Weaver the right to an exclusive territory.  Therefore, BKC had no duty to

_____

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

refrain from licensing new franchises in Great Falls. The <u>Scheck</u> court's attempt to separate the franchisee's right from the franchisor's duty is logically unsound.

We hold that no independent cause of action exists under Florida law for breach of the implied covenant of good faith and fair dealing. Where a party to a contract has in good faith performed the express terms of the contract, an action for breach of the implied covenant of good faith will not lie. More specifically, a cause of action for breach of the implied covenant cannot be maintained (a) in derogation of the express terms of the underlying contract or (b) in the absence of breach of an express term of the underlying contract. <u>See</u> <u>Riviera Beach</u>, 691 So. 2d at 521; <u>Hospital Corp. of America</u>, 710 So. 2d at 575.

In the present case, the district court correctly concluded that Weaver's claim for breach of the implied covenant must fail as a matter of law, because Weaver cited no express provision of either franchise agreement that had been breached. Under Florida law, Weaver's failure to identify an express contractual provision that has been breached dooms his claim for breach of the implied covenant of good faith and fair dealing. We affirm the district court's grant of summary judgment to BKC.

---

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.                    13

*Montana and Florida Unfair Trade Practices Acts*

Weaver argues that the district court erred in dismissing his claim under the Montana Unfair Trade Practices Act (MUTPA) without granting leave to amend his complaint to assert a claim under the nearly identical Florida Deceptive and Unfair Trade Practices Act (FDUTPA).  The #1666 and #6158 franchise agreements contain provisions stating that Florida law will govern any disputes arising out of the franchise agreements.  Notwithstanding that provision, Weaver alleged violation of the MUTPA, rather than the FDUTPA, in his complaint.  The district court held that the MUTPA "is inapplicable to a lawsuit construed in accordance with the laws of Florida."  Weaver, 798 F. Supp. at 690.

On appeal, Weaver does not argue that Montana law in applicable to this case, but he argues that the trial court erred in dismissing his MUTPA claim without granting leave to amend to state a claim under the FDUTPA.  However, BKC points out, and Weaver does not dispute, that Weaver never moved to amend his complaint to state a claim under the FDUTPA.[4]

Although leave to amend should be liberally granted, a trial court is not required sua sponte to grant leave to amend prior to making its decision.  See Glenn v. First Nat'l Bank in Grand Junction, 868 F.2d 368, 370 (10th Cir. 1989); Bankers Ins. Co. v. Florida Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 n.3 (11th Cir. 1998).  Since Appellants never moved for leave to amend, we can find no abuse of

---

[4] Weaver argues that he "requested that if the District Court chose to apply Florida law over that of Montana, the District Court should also permit Appellants to amend their counter claim to include a claim under the . . . FDUTPA."  The request for leave to amend, however, appeared in Weaver's Opposition to Burger King's Motion for Summary Judgment.  It is undisputed that no motion requesting leave to amend was ever filed in regard to the MUTPA claims.

---

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.                    14

discretion in the district court's decision not to grant leave to amend.

*Weaver's Motions for Leave to Amend*

Weaver argues that the district court abused its discretion in denying his motions for leave to amend. On October 13, 1994, Weaver moved for leave to amend, seeking to add claims related to fraudulent misrepresentation. The court denied the motion because it found that Weaver's retention of new counsel was the sole reason for the new claims. The court held that "Defendants have allowed too much time to elapse to, without justification, assert four entirely new claims requiring different proof, new discovery, another round of pretrial motions, and, essentially, further delay."

On June 27, 1995, Weaver moved to amend his complaint to add a claim for bad faith refusal to renew franchise #1666. The district court denied the motion because, inter alia, Weaver had unduly delayed in seeking leave to amend and the claim was futile since BKC had properly terminated the agreement because of Weaver's default.

On October 2, 1995, Weaver moved to amend his complaint to add specific contractual provisions allegedly breached by BKC. The district court denied this motion on the grounds that Weaver had offered no justification for his delay in offering the amendment and, more importantly, the amendment would be futile since Weaver nowhere alleged that BKC had breached an express contractual provision.

Leave to amend should be liberally granted when necessary in the interest of justice. Fed. R. Civ. P. 15(a). "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981). The U.S. Supreme Court has

---

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.                    15

held that undue delay and futility are adequate bases for denying leave to amend.

> In the absence of any apparent or declared reason − such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. − the leave sought should, as the rules require, be "freely given."  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court.

Foman v. Davis, 371 U.S. 178, 182 (1962).  Grant of leave to amend is within the trial court's discretion and denial is reviewed for abuse of discretion.  Smith v. Duff and Phelps, Inc., 5 F.3d 488, 493 (11th Cir. 1993).

In each of its rulings, the district court denied the motion for leave to amend on the basis of undue delay and/or futility.  This court has found delay to be undue where "both the parties and the court were fully prepared for trial and the addition of a new claim would have re-opened the pretrial process and delayed the trial and [where the plaintiff's] attorney had sufficient opportunity to request a timely amendment before the pretrial order had been submitted."  Nolin v. Douglas County, 903 F.2d 1546, 1551 (11th Cir. 1990).  We have also found delay to be undue where the motion for leave to amend was filed thirty months after the original complaint and three weeks before trial, where the only apparent reason for the delay was the plaintiff's retention of a new attorney.  Rhodes v. Amarillo Hosp. Dist., 654 F.2d 1148, 1154 (5th Cir. 1981).[5]  See also Hester v. International Union of Operating Engineers, 941 F.2d 1574, 1578-1579 (11th Cir. 1991); Smith, 5 F.3d at 493-494.

Here, the district court denied the October 13, 1994 motion because forty months had passed since the filing of the original counterclaim, the new counts would require

---

[5] The Eleventh Circuit has adopted as binding precedent decisions of the Fifth Circuit rendered prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

proof of different facts, and the only apparent reason for the new claims was Weaver's retention of new counsel. The district court denied the June 27, 1995 motion based on, inter alia, undue delay, since it was filed seven months after the previous motion found to be barred by undue delay. The district court denied the October 2, 1995 motion on the grounds, inter alia, that Weaver had unduly delayed by offering the amendment on the eve of trial without explanation for the delay.

We have compared the facts of this case with Nolin, 903 F.2d at 1551 (affirming denial of leave to amend where amendment would have postponed trial); Rhodes, 654 F.2d at 1154 (only apparent reason for thirty months' delay was plaintiff's new attorney); and Smith, 5 F.3d at 493-494 (delay of three years justified denial of leave to amend). We are unable to say that the court abused its discretion in denying leave to amend because of undue delay.

The district court also denied the June 27, 1995 and October 2, 1995 motions because it found that the proposed amendments would be futile. The district court found that the claim sought in the June 27, 1995 motion (for bad faith refusal to renew) would be futile because the court had already decided on summary judgment that BKC's refusal to renew the #1666 franchise was justified, since Weaver was in default as a result of his nonpayment of royalties. The district court also found that the October 2, 1995 motion was futile because it did not allege any breach of the franchise agreements by BKC, and therefore was "insufficient as a matter of law" to state a claim for breach of the implied covenant of good faith.

This court has found that denial of leave to amend is justified by futility when the "complaint as amended is still subject to dismissal." Halliburton & Assoc., Inc. v.

---

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation. 17

Henderson, Few & Co., 774 F.2d 441, 444 (11th Cir. 1985).  See also Florida Power & Light Co. v. Allis Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir. 1996).  We agree with the district court that the claims that Weaver sought to add in the June 27, 1995 and October 2, 1995 motions were insufficient as a matter of law.  Thus, the motions were properly denied as futile.

*Discovery Rulings*

Appellants argue that the district court abused its discretion in denying Weaver the opportunity to conduct discovery in regard to BKC's policies pertaining to encroachment of Burger King® restaurants on each other.  Weaver argues that the information sought may show that Weaver was singled out for treatment at odds with BKC's uniform policy regarding encroachment.  Weaver argues that the district court erred in denying discovery on the basis that the documents were privileged under Fed. R. Evid. 408.[6]  The proper standard for discovery, Weaver argues, is Fed. R. Civ. P. 26(b)(1)[7] and here the standard is met because the information sought "appears reasonably calculated to lead to the discovery of admissible evidence."

After reviewing the record, we find no merit in Appellants' argument.  The district court applied the proper standard in denying discovery.  Discovery was denied not because the sought-after documents contained settlement discussions but because Weaver

---

[6] Statements made in settlement negotiations are "not admissible to prove liability for or invalidity of [a] claim."  Fed. R. Evid. 408.

[7] "Parties may obtain discovery regarding any matter, not  privileged, which is relevant to the subject matter involved in the pending action. . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

---

\* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.                18

"failed to demonstrate what possible relevancy these documents could have."[8]

"[A] district court can deny a motion to compel further discovery if it concludes that the questions are irrelevant." Commercial Union Ins. Co. v. Westrope, 730 F.2d 729, 732 (11th Cir. 1984). We find no abuse of discretion in the district court's conclusion that the information sought by Weaver was irrelevant to his causes of action.

*Summary Judgment for BKC*

Weaver argues that summary judgment for BKC was inappropriate because he raised material issues of fact regarding his affirmative defenses of waiver and estoppel.[9] Weaver argues that the district court indicated in 1991 that it found a material issue of fact raised by his waiver and estoppel defenses and concludes that "it is clear that material issues of fact still existed for trial concerning Weaver's waiver and estoppel defenses."

We are not persuaded that the district court erred in granting summary judgment to BKC. Although the district court acknowledged in 1991 that Weaver had provided some support for his defenses of waiver and estoppel, this acknowledgement came in a preliminary order relating to a preliminary injunction. The court's September 4, 1996 decision to grant summary judgment, on the other hand, was made on a more complete record after the parties had had an additional five years to conduct discovery and submit evidence. The court fully considered the evidence cited by Weaver as supporting his

---

[8] The magistrate judge in his order of January 29, 1992 found that Weaver had not shown the relevancy of the sought-after documents. In its order of March 27, 1992, the district court approved the magistrate judge's order "in its entirety."

[9] Weaver also argues that a material issue existed regarding BKC's antecedent breach by breaching the implied covenant of good faith. This argument is unpersuasive since we have already held that Weaver's claim for breach of the implied covenant fails as a matter of law.

---

\* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.                    19

defenses and concluded that no reasonable jury could conclude that BKC implicitly acquiesced in Weaver's withholding of payment.

The district court applied the correct standard for a grant of summary judgment. "[The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself . . . whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

We have fully considered the record evidence cited by Weaver in support of his affirmative defenses of waiver and estoppel. We agree with the district court that the evidence of record is insufficient for any reasonable jury to find for Weaver on these defenses. BKC was properly granted summary judgment on its breach of contract and trademark infringement claims.

---

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

*Lost Profits Accounting*

Weaver argues that the district court erred in ordering an accounting for lost profits because BKC was not harmed by Weaver's actions, especially in view of the fact that Weaver deposited into escrow all monies owed to BKC under the franchise agreement. In fact, Weaver argues, BKC benefited from Weaver's actions because BKC's goodwill and marks were enhanced by Weaver's continued operation of his Burger King® franchises, and thus an award of lost profits to BKC represents a windfall and is improper.

This court has previously addressed the award of lost profits for trademark infringement. "The damage provision of the Lanham Act entitles a trademark holder to recover, among other things, the profits earned by a defendant from infringement of the mark. 15 U.S.C.A. § 1117. The Act confers upon the district court a wide scope of discretion to determine the proper relief due an injured party. The statute provides that a damage award may be adjusted if the profits prove to be inadequate or excessive. This remedial accommodation clearly commits considerable discretion to the trial judge." Burger King Corp. v. Mason, 855 F.2d 779, 780-781 (11th Cir. 1988) (footnote and citation omitted).

We perceive no abuse of discretion in the award of lost profits in this case. Although Weaver argues that BKC will recover a windfall from an award of lost profits, the focus of a lost profits accounting for trademark infringement is not on the trademark owner, but on the infringer. "[T]he law in this Circuit is well settled that a plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits under § 35 of the Lanham Act, 15 U.S.C.A. § 1117. An accounting for profits has been

determined by this Court to further the congressional purpose by making infringement unprofitable, and is justified because it deprives the defendant of unjust enrichment and provides a deterrent to similar activity in the future." Mason, 855 F.2d at 781 (citation omitted).

The district court found that an award of lost profits was appropriate because (1) awarding lost profits was necessary to deter other Burger King® franchisees from unauthorized use of BKC's marks after termination of their franchise and (2) Weaver's infringement of the Burger King® marks after he received notice of termination in December 1990 was willful and deliberate. Either of these factors justifies the award of lost profits. See Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1521 (11th Cir. 1990). The record supports the district court's conclusions regarding the need for deterrence and the deliberate and willful nature of the infringement. The district court did not abuse its discretion in awarding lost profits.

*Conclusion*

Having carefully considered the record and the arguments of the parties, we find no reversible error in the district court's decision. The decision of the district court is

AFFIRMED.

---

* Honorable Edward S. Smith, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.                    22