HARRIS, Judge.
ITT Community Development Corporation (ITT), in developing its Palm Coast project, constructed a storm water drainage system.[1] The 1979 version of the pertinent covenants and restrictions (C & R’s) provides as follows:
The owner of a lot or dwelling unit in the Palm Coast community is hereby made liable to the company, its successors or assigns for a pro rata share of the actual cost of the operating expenses of a community benefit program for facilities and services, or to further the environmental and aesthetic principles of the Palm Coast community. The implementation of the program and the extent thereof shall be within the sole discretion of the company. The funds collected may be used to cover the costs (1) for the maintenance, expansion, or creation of facilities, amenities or programs or services of a community nature.
* * * * * *
In addition to the restrictions, reservations and provisions herein provided as between the company and party or parties who hereafter may acquire title to any lot or property fronting or [sic] any waterway, the company does hereby specifically reserve and unless otherwise specifically provided in any future deeds or conveyances, the company shall be understood to reserve all riparian and property rights requisite and appropriate to enforce the restrictions and declarations herein set forth except that the company does not now undertake nor has it undertaken any obligation to maintain any canal or other waterway or to maintain any bulkhead, dead man anchor, bulkhead cap, riprap or other similar installation. (Emphasis supplied).
John Moore, who purchased after the enactment of the 1979 version of the C & R’s, filed a class action to determine whether ITT could assess the costs of maintaining the storm water drainage system as part of the “community benefit program.” Although the parties agree that the 1979 version of the C & R’s is the one applicable to this action, it appears that similar provisions were contained in earlier filings by ITT. For example, in the covenants, restrictions and easements dated March 1, 1973, and recorded in the Public Records of Flagler County in Book 47, Pages 305 — 314, section 15(b) contains the same disclaimer as to responsibility for maintenance of the waterways.
The issue before the trial court (both parties agreed that the interpretation of the C & R’s would be a “matter of law” and moved for summary judgment) was whether the provisions of the 1979 C & R’s were so vague and ambiguous that they could not authorize assessment of the costs of maintenance of the storm water drainage system as part of a community benefit program. The trial court, after conducting a thorough hearing, held that the C & R’s, in a clear and unambiguous manner, authorized ITT in its discretion to determine that storm water drainage was a community benefit and could be funded under the provisions of the C & R’s. In so doing, the court specifically held that the term “sole discretion” is clear and unambiguous. The court also held that although ITT had provided the maintenance of the storm water drainage system for a number of years, it had done so voluntarily and quoted from the C & R’s: “... the Company [ICDC] does not undertake any obligation to maintain any canal or other waterways or to maintain any bulkhead, deadman anchor, bulkhead cap, riprap or other similar installation.” It is clear from this portion of the summary judgment that the court considered the issue of whether ITT had the obligation to provide perpetual maintenance of the storm water drainage system and concluded that the relevant C & R’s clearly and unambiguously provided that it did not. Moore has pointed to no provision in any version of the C & R’s which impose this obligation on ITT. Instead, he argues on appeal that since section 498.037, Florida Statutes, imposes the obligation on the developer to inform in its public offering statement about any drainage system and to indicate where the responsibility for maintenance *117 of the system lies, and since ITT did not specifically mention the storm water drainage system in its public offering statement, then the obligation for the continuing maintenance of the system should be on ITT. There are two problems with this argument. First, it was not made below. Therefore, we should not consider it on appeal. Second, although there is a remedy for not complying with the provisions of Chapter 498 (see sections 498.059 and 498.061), Florida Statutes, the imposition of the obligation for perpetual maintenance is not one of them.
The trial court concluded that since the document relied on by both parties was not ambiguous in providing that ITT assumed no responsibility for the maintenance of the storm water drainage system and in providing that ITT had the sole discretion to include storm water drainage in the community benefit program, resort to parol evidence was unnecessary and improper. We agree with the trial court that the removal of storm water from the community is of a community benefit and that the C & R’s clearly show that ITT did not commit to provide maintenance for the storm water drainage system in perpetuity.
We agree with the trial court’s analysis and holding and affirm.
AFFIRM.
GRIFFIN, C.J., and GOSHORN, J„ concur.

. There was also a surface water drainage system “appurtenant” to the streets (swales) in the community but the maintenance responsibility of that system is not an issue in this case.