BURGER KING CORPORATION,
Plaintiff,

v.

HINTON, INC., James A. Hinton and
Michael S. Hinton, Defendants.

No. 01–2249–CIV.

United States District Court,
S.D. Florida,
Miami Division.

May 7, 2002.

Michael D. Joblove, Nina Greene Kersh, Genovese Joblove & Battista, Miami, FL, for Plaintiff.

Robert Zarco, Robert Mitchell Einhorn, Jude Christopher Cooper, Zarco & Pardo, Miami, FL, for Defendants.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary Judgment (DE# 17). Defendants' response and Plaintiff's reply thereto have been filed.

UPON consideration of the Motion, responses, and the pertinent portions of the record, the Court enters the following Order granting in part and denying in part Plaintiff's Motion for Summary Judgment.

## BACKGROUND

Defendant Company, Hinton, Inc., ("Hinton"), operated eighteen Burger King restaurants, all located in South Carolina. Plaintiff Burger King Corporation ("BKC") and Defendant company entered into eighteen separate Franchise Agreements and eight Lease agreements concerning these franchise restaurants. The leases were executed during the time span of March 1, 1993 through June 15, 2000. It is undisputed that Defendants executed the Franchise Agreements and Leases involved in the above-styled matter.[1] BKC alleges that Defendants failed to pay royalties, advertising, investment spending, rent, property taxes, and other expenses due under the Franchise Agreements and Leases. Under the terms of the Franchise Agreements, Defendants agreed to make monthly payments in exchange for, among other things, a license to use the Burger King® trademarks and franchise system at their restaurants.

After providing notice of default on June 4, 2001 and the opportunity to cure such default, BKC sued Defendant company for damages in June of 2001 after Defendants failed to pay the amounts due before the expiration of the cure period. BKC also filed suit against individual defendants Michael Hinton and James Hinton as they personally guaranteed to BKC that each and every obligation of the Defendant company would be performed.

Defendants justify their failure to make payments as required under the Franchisee Agreements and Leases with the assertion that BKC prevented them from complying with their contractual obligations through the following actions and omissions; (1) BKC's failure to provide Defendants support, services, and assistance; (2) BKC's reduction of the number of field personnel in the South Carolina market, which impacted BKC's ability to give services to Defendants' restaurants; (3) BKC's refusal to give marketing support to Defendants; and (4) Plaintiff's utilization of substandard advertising. Defendants claim that the above listed circumstances made it impossible for them to comply with their financial obligations.

After their financial situation did not improve, Defendants allege they received instructions from BKC concerning the formulation of a "workout plan" under which Defendants could reorganize their business in order to fulfill their financial obligations under the Franchise Agreements. Defendants allege that based on this representation, they did not undertake drastic measures with respect to their franchises.

1. As the Franchise Agreements, Leases, and Guarantees are the same, only one example of each has been filed with the Court. The Court references two of these Agreements, labeled Exhibit A and Exhibit B. Both of these are attached to Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. Exhibit A is the Franchise Agreement for BK# 8502 and Exhibit B is the Lease for BK# 406.

Although BKC has provided the Court with the notices of default mailed to Defendants, Defendants state that they only discovered BKC's intention to terminate the Franchise Agreements and Leases on June 18, 2001, the date of actual termination.

In this action BKC seeks the amount owed for past due royalties, rents, property taxes, and advertising contributions, in addition to lost profits under the Agreements. BKC alleges that Defendants have failed to make (1) advertising and royalty payments since February 2001, (2) rent payments on restaurants leased from BKC since March 2001, and (3) property tax payments due in December 2000. The total amount BKC seeks under the Agreements is $860,676.84. Defendants dispute BKC's alleged entitlement to lost profits, an amount BKC asserts totals $10,074,307.00. In sum, BKC seeks $10,934,983.00 ($860,676.84 in sums past due plus $10,074,307.00 in lost profits).

On April 1, 2002 the undersigned granted Defendants' motion for leave to amend to file counterclaims. Defendants' counterclaims are for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) promissory estoppel. Defendants allege that BKC materially breached the express terms of the Franchise Agreements, exercised its discretion in an unreasonable manner, and represented to Defendants that it would assist them in formulating a "workout plan." Defendants state that they have suffered substantial damages based on BKC's misconduct.

## I. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is appropriate only if the record evidence shows that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir.1995). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In applying this standard, the Court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* at 157, 106 S.Ct. at 1348.

However, the non-moving party may not "rest upon the mere allegations and denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In fact, "the plain language of Rule 56(c) mandates the entry of summary judgment... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,*

477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure to present proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

*B. Plaintiff's Motion for Summary Judgment*

BKC moves for the entry of summary judgment, claiming that (1) Defendants' failure to pay constitutes a breach of the Franchise Agreements, (2) Defendants' affirmative defenses do not preclude entry of summary judgment in favor of BKC, and (3) BKC is entitled to lost profits under the Franchise Agreements. In opposition, Defendants state that the BKC prevented Defendants from fulfilling their contractual obligations and misrepresented that it would assist the Defendants in formulating a "workout plan." Defendants also argue that BKC is not entitled to lost profits.

*(1) Plaintiff's alleged failure to adhere to the Franchise Agreements and Leases*

 Defendants do not dispute their failure to remit payment to BKC under the Franchise Agreements and Leases executed by the parties. Instead Defendants assert that they were justified in not making payment based on BKC's failure to adhere to its contractual obligations. A review of the Franchise Agreements shows that BKC has not breached the contracts it entered into with Defendants.

Defendants refer to specific provisions of the Franchise Agreements, alleging that BKC breached agreed-upon terms. For example, Defendants state that in Section 5 of the Franchise Agreement for Defendants' Burger King restaurant #406,

Burger King agreed to "periodically advise and consult with Franchisee in connection with the operation of the Franchised Restaurant and to provide to Franchisee support and assistance." [2] The Court notes that the **actual** language of the Agreement reads "periodically advise and consult with Franchisee in connection with the operation of the Franchised Restaurant and to provide to Franchisee." [3] Following after this statement are a list of the services to be provided to the Franchisee. These include

(1) the provision of a MOD Manual; (2) merchandising, marketing, and advertising research data and advice as developed by BKC and deemed by BKC to be helpful in the operation of a BK franchise; (3) standardized accounting, cost control, and inventory control systems; and (4) communication of new developments in food preparation, equipment, food products, packaging, service and restaurant management which are relevant to the operation of a BK restaurant.

Nowhere in Section 5 of the Franchise Agreement does the contract state that BKC will provide support and assistance other than those services listed above.

Defendants also attempt to bolster their claim that BKC breached its obligations to support them by referring to Section 6 of the Franchise Agreement (Exhibit B). Section 6 reads as follows:

**SERVICES AVAILABLE TO FRANCHISEE**

BKC agrees to provide the following services to FRANCHISEE and to use reasonable efforts to provide them in a manner reasonably designed for the Burger King System, including the use of technol-

---

**2.** Defendants' memorandum in Opposition to Plaintiff's Motion for Summary Judgment, at 5.

**3.** Exhibit A, Section 5.

ogy deemed by BKC to be competitive in the quick service restaurant industry. Prior to making material changes to the content of, and manner by which, the following items or services are delivered to FRANCHISEE, BKC shall consult with the Franchisee Advisory Council to receive input as to the proposed change. The content of and manner by which the following services are to be delivered by BKC shall be within BKC's sole reasonable discretion:

A. A reproducible copy of either (i) the standard architectural building plans and specifications for current approved free-standing buildings or double drive thru buildings, or (ii) such other standard approved restaurant facility, whichever is applicable. Any modifications of the standard plans and specifications, whether requested or required by planning and zoning boards, building codes or otherwise, must be approved in writing by BKC and are to be paid for by FRANCHISEE.

B. A pre-opening training program conducted at BKC training facilities and certified Burger King restaurants.

C. Pre-opening and opening assistance by personnel of BKC at the Franchised Restaurant for a period of time as BKC deems appropriate under the circumstances. BKC may, in its reasonable discretion, consider the following factors: the experience of the FRANCHISEE, the type of facility being operated, whether the assistance is for a new opening or the reopening after a transfer of ownership of an already operating restaurant, the prior Burger King System experience of FRANCHISEE's management, the projected volume of the restaurant, as estimated by FRANCHISEE, and any other factors that BKC deems appropriate for consideration.

D. Opening promotion program. A portion of FRANCHISEE's advertising and sales promotion payment shall be available to implement grand opening promotions conducted after the Franchise Restaurant opens, in accordance with company policy at the time of opening (Exhibit "C"). Any additional costs incurred in implementing the program shall be FRANCHISEE's responsibility.

E. BKC's MOD manual in an approved format, a copy of which will be loaned to FRANCHISEE for the Term of this Agreement.

F. Such merchandising, marketing, and advertising research data and advice as may be developed from time to time by BKC and deemed by it to be helpful in the operation of a Burger King Restaurant.

G. Standardized accounting, cost control, and inventory control systems.

H. Communication of new developments, techniques and improvements of BKC in food preparation, equipment, food products, packaging, service and restaurant management which are relevant to the operation of a Burger King Restaurant.

I. Such ongoing support as BKC deems reasonably necessary to continue to communicate and advise FRANCHISEE as to the Burger King System including the operation of the Franchised Restaurant.

The Court finds that the contracts referenced do not obligate BKC to provide general support to Defendants. It is well established that the clear and unambiguous words of a contract are the best evi-

dence of the intent of two parties. *See Murry v. Zynyx Mktg. Communications,* 774 So.2d 714, 715 (Fla. 3d DCA 2000). In addition, "general language of a contract must yield to specific language which deals with the matter at issue." *Genunzio v. Genunzio,* 598 So.2d 129, 132 (Fla. 2d DCA 1992). The Franchise Agreements clearly set forth the services BKC is to provide Defendants. The specific wrongs about which Defendants complain are not enumerated among these provisions. Any of Defendants' allegations of breaches of implicit contractual provisions cannot stand as a matter of law absent contemporaneous claims of breach of express contract terms. *See Insurance Concepts and Design, Inc. v. Healthplan Servs.,* 785 So.2d 1232, 1234 (Fla. 4th DCA 2001). The clear and unambiguous language of the Franchise Agreements does not provide Defendants with generalized support and assistance.

Defendants also argue that they are entitled to a package of services under Section 6 of the Franchise Agreement (Exhibit B). However, this section provides that the content and manner of BKC's provision of services shall be within BKC's sole reasonable discretion. Section 6(F) of the agreement provides that BKC shall provide "such merchandising, marketing and advertising research data and advice as may be developed from time to time by BKC and deemed by it to be helpful in the operation of a Burger King Restaurant." Section 6(I) only obligates BKC to provide the support BKC "deems reasonably necessary to continue to communicate and advise FRANCHISEE as to the Burger King System." The fact that BKC maintains the sole reasonable discretion to determine the way in which it provides the enumerated services in the Franchise Agreement bars Defendants' breach of contract claim. *See Burger King Corp. v. Austin,* [1990–1992 Transfer Guide] Bus. Franchise Guide (CCH) ¶ 9731 at 21, 774

(Nov. 5, 1990) (dismissing breach of contract claim based on allegations concerning management changes where franchise agreement did not explicitly or implicitly permit franchisee to be involved in management affairs); *Ernie Haire Ford v. Ford Motor Co.,* 260 F.3d 1285, 1292 (11th Cir.2001) (affirming grant of summary judgment on breach of contract claim where franchisee alleged company's exercise of discretion was in bad faith; franchisor's decision was not capricious nor in contravention of the parties' reasonable expectations); *Moore v. Palm Coast Cmty. Serv.,* 701 So.2d 115, 116–17 (Fla. 5th DCA 1997) (affirming trial court's finding that document granting a developing company complete discretion in the implementation of a water drainage project was not ambiguous, as the plain language stated that "the implementation of the program and the extent thereof shall be within the sole discretion of the company"). *See also America's Favorite Chicken Co. v. Cajun Enter., Inc.,* 130 F.3d 180, 182 (5th Cir. 1997) (affirming dismissal of breach of contract claim where franchise agreement vested complete discretion in company to provide assistance in operation of franchises); *Burger King Corp. v. H & H Rests., LLC,* 2001 WL 1850888, *6 (S.D.Fla.2001) (finding franchisor's consent not to be unreasonably withheld, in violation of "sole judgment" clause of the franchise agreement).

Defendants' allegations that BKC failed to provide a package of support, including merchandising, marketing, and advertising research data and advice, are misplaced as such services were at the discretion of BKC. This is clearly indicated in plain language in the Franchise Agreements.

Defendants also rely on additional sections of the Franchise Agreements as evidence of BKC's contractual obligation to provide general support: (1) Paragraph C

of the Introduction to Exhibit A reads "BKC has established a high reputation and a positive image with the public as to the quality of products and services available at Burger King Restaurants, which reputation and image have been and continue to be unique benefits to BKC and its Franchisees;" (2) Paragraph D of the Introduction of Exhibit A, provides "FRANCHISEE recognizes the benefits to be derived from being identified with and receiving a Franchise from BKC and being able to utilize the Burger King System and the Burger King Marks which BKC makes available to its Franchisees;" and (3) Section 4 "Standards and Uniformity of Operation" of the Franchise Agreement attached as Exhibit A, detailing BKC's policy of maintaining uniform standards of operation. The Court finds that the plain language of these sections do not establish any sort of affirmative duty upon BKC. Defendants' reliance on them to do just this is misplaced. *See Murry*, 774 So.2d at 714.

Defendants cite the case *Amoco Oil Co. v. Gomez*, 125 F.Supp.2d 492, 500 (S.D.Fla. 2000) for the proposition that parties who prevent performance of a contract cannot take advantage of their misconduct in bringing a claim for breach. The Court does not find this case to be analogous to the instant matter however, as in *Amoco Oil Co.*, Amoco did not maintain fuel pumps in working order, thereby preventing a gas station operator from performing her obligations under the Commission Marketer Agreement and Lease. *Id.* at 501. Had the company maintained the pumps, the operator would not have abandoned the gas station. In the instant case, Defendants cannot point to a general failure on behalf of BKC which prevented them from operating their franchises. The provisions of the Franchise Agreements referenced by Defendants clearly provide that any support given is at the discretion of BKC.

### (2) The Franchise Agreements

BKC asserts that many of the additional breaches alleged by Defendants are specifically allowed under the Franchise Agreements. These other allegations of Defendants include (1) BKC changed its management several times, making it difficult for Defendants to establish lasting relationships; (2) BKC required Defendants to remain current on their financial obligations under the Franchise Agreements despite Defendants' hardships; (3) Defendants were expected to comply with the Agreements and operate their restaurants in accordance with such; (4) Defendants allege that they did not receive marketing support from BKC during the last two years of their relationship; (5) BKC asked Defendants for financial statements; (6) BKC asked Defendants for a list of restaurants they were willing to sell; and (7) BKC informed Defendants that it would not exercise its option to purchase Defendants' franchises.

As for Defendants' first allegation, franchise agreements do not permit franchisees to interfere with the internal management affairs of the franchise corporation. *See Austin,* at 21, 774 (dismissing counterclaim where party brought breach of contract action based on changes in management). As for Defendants' claims of financial difficulty, the fact that BKC did not breach any material terms of the contract signifies that Defendants were obligated to continue their payments. *See Travelodge Hotels, Inc. v. Kim Shin Hospitality, Inc.,* 27 F.Supp.2d 1377, 1381 (M.D.Fla.1998). In addition, "unexpected difficulty or expense" will not eliminate a party's obligations under a contract. *North Am. Van Lines v. Collyer,* 616 So.2d 177, 179 (Fla. 5th DCA 1993).

BKC disputes Defendants' assertion that it failed to provide marketing support.

Nonetheless, the Court notes that the relevant marketing provision of the Franchise Agreements, Section 9(B) of Exhibit B, states that the allocation of advertising contributions is at the discretion of BKC's business judgment. *See Burger King Corp. v. Agad,* 941 F.Supp. 1217, 1222 (N.D.Ga.1996) (granting summary judgment where defendants objected to BKC use of advertising funds to make a donation to the American Red Cross; franchise agreement provided that all advertising expenditures would be at BKC's discretion).

The Court finds that the remainder of Defendants' allegations are specifically addressed in the Franchise Agreements. Defendants are to furnish financial statements to BKC. *See* Exhibit A, Section 9(A) and Exhibit B, Section 10. BKC is also entitled to documentation prior to any transfer of a restaurant. *See* Exhibit B, Section 15(E). BKC also retains the right of first refusal in the event a franchise will be sold, but BKC is not required to purchase any restaurant. *See* Exhibit A, Section 15 and Exhibit B, Section 16.

### (3) *Plaintiff's alleged misrepresentations*

█ Defendants argue that based on BKC's misrepresentation that it would assist Defendants in formulating a "workout plan," summary judgment is inappropriate. Defendants cite the case *Amoco Oil Co. v. Gomez* for the assertion that where genuine issues of material fact exist as to whether a party relied on misrepresentations made by a company, the entry of summary judgment in favor of the company is improper. In the *Amoco Oil Co.* case, a gas station operator brought an affirmative defense alleging that Amoco informed her it would fix her station's fuel pumps if she would sign certain contracts. *Amoco Oil Co.,* 125 F.Supp.2d at 504.

BKC does not dispute that it made representations concerning a "workout plan," but instead argues that Defendants did not materially change their position as a result of the representations, and therefore promissory estoppel should not apply. *W.R. Grace and Co. v. Geodata Servs., Inc.,* 547 So.2d 919, 924–25 (Fla.1989).

Defendants have provided evidence supporting their assertion that BKC would assist in creating a "workout plan," in the form of the Declaration of James A. Hinton and the Deposition Transcript of Burger King Corporation executive Gail Klein–Voss. Gail Klein–Voss states that she discussed the prospect of a "workout plan" with James Hinton, but only on a "general basis." [4]

For promissory estoppel to apply, the evidence must be clear and convincing. *W.R. Grace,* 547 So.2d at 925. Defendants have not provided conclusive evidence showing that they received an instruction from BKC to cease their regular payments, as a "workout plan" would be formulated as an alternative. In absence of such proof, any reliance asserted by Defendants on conversations with Ms. Klein–Voss was unreasonable as a matter of law. Defendants have not demonstrated that BKC specifically stated that a "workout plan" would be created which would excuse Defendants from the obligations of the Franchise Agreements. In contrast, the gas station owner in *Amoco Oil Co.* presented evidence that Amoco told her it would fix her gas pumps once she signed an agreement.

### (4) *Defendants' affirmative defenses*

█ Defendants have asserted the following affirmative defenses; (1) BKC's failure to state a cause of action, (2) BKC's prior breaches of the Franchise Agree-

---

4. Deposition Transcript of Gail Klein–Voss, at 33.

ments precludes its recovery, (3) BKC is estopped from recovery, (4) BKC has waived its right to pursue this action, (5) BKC failed to mitigate damages and/or failed to credit amounts owed the Defendants, and (6) BKC's wrongful conduct caused Defendants' damages. The Court finds that none of Defendants' affirmative defenses enable Defendants to defeat BKC's motion for summary judgment.

BKC has in fact stated a cause of action, and the Court has already addressed Defendants' assertions that BKC breached its obligations under the Franchise Agreements. Defendants' refusal to pay BKC amounts due under the Franchise Agreements is clearly a default. *See* Exhibit B, Section 16. The fact that Defendants have alleged wrongdoing on behalf of BKC does not excuse Defendants' failure to remit sums owed. *See Burger King Corp. v. Majeed,* 805 F.Supp. 994, 999 (S.D.Fla. 1992). *See also Burger King Corp. v. Weaver,* 169 F.3d 1310, 1317–1318 (11th Cir.1999) (affirming dismissal of breach of implied covenant of good faith and fair dealing claim; franchisee argued that company's authorization of new franchise nearby constituted a breach of the franchise agreement). "Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages. Under no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits." *S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 376 (3d Cir.1992).

Defendants' assertion that BKC has waived its rights to obtain damages under the Agreements is contrary to law and the Agreements entered into by the parties. *See* Exhibit A, Section 19. It is well-established that non-waiver clauses of the type used in the Franchise Agreements are valid and enforceable under Florida law. *See Burger King Corp. v. Lee,* 766 F.Supp. 1149, 1156 (S.D.Fla.1991); *Philpot v. Bouchelle,* 411 So.2d 1341 (Fla. 1st DCA 1982). The inclusion of a non-waiver clause in the Franchise Agreements precludes Defendants' defenses of waiver and estoppel. *Id.* at 1344–45. *See also MCA Television Ltd. v. Public Interest Corp.,* 171 F.3d 1265, 1270 (11th Cir.1999).

Finally, under Florida law a franchisor does not have an obligation to minimize losses or mitigate damages, as a franchise agreement is a non-exclusive contract. *See Burger King Corp. v. Barnes,* 1 F.Supp.2d 1367, 1372 (S.D.Fla.1998); *Gary Massey Chevrolet, Inc. v. Ritch,* 507 So.2d 713, 715 (Fla. 1st DCA 1987); *Graphic Assoc., Inc. v. Riviana Rest. Corp.,* 461 So.2d 1011, 1014 (Fla. 4th DCA 1984).

*(5) Defendants' counterclaims*

Defendants have counterclaimed on three counts; (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) promissory estoppel. The parties have not provided the Court with extensive briefing on these three counterclaims, but the Court finds that they have become moot in accordance with the foregoing.

The Court has already addressed Defendants' claims for breach of contract against BKC. Having failed to demonstrate that there was a breach of an express term of the Franchise Agreements, Defendants' claim of breach of the implied covenant of good faith and fair dealing necessarily fails. *See Weaver,* 169 F.3d at 1317–1318.

As for Defendants' counterclaim of promissory estoppel, the Court has already found that Defendants have not provided conclusive evidence of BKC's representation to Defendants concerning the alternative "workout plan." As clear

and convincing evidence is lacking, promissory estoppel is inappropriate. *W.R. Grace*, 547 So.2d at 925.

### (6) Plaintiff's entitlement to lost profits

BKC has asserted that it is entitled to recover the lost profits it would have earned under the remaining terms of the Franchise Agreements. Defendant strongly disputes BKC's entitlement to lost profits, arguing that (1) Defendants only failed to pay sums due to BKC and did not abandon their franchises, therefore distinguishing this case from *Burger King Corp. v. Barnes*, in which the undersigned awarded lost profits; (2) BKC is not entitled to a windfall, as it will resell the franchises and earn rents and royalties from the new businesses; and (3) an award of lost profits is barred in this instance as the amount would be based on speculation.

The Court finds that Florida law allows BKC, as the non-breaching party, to choose between being placed in the position it would have been in had the contract been fully performed by seeking an award of lost profits or the position it would have been in prior to the breach, which would be accomplished through an award of reasonably foreseeable damages. *See In re Mid–America Corp.*, 159 B.R. 48, 54 (Bankr.M.D.Fla.1993); *Plantation Key Developers v. Colonial Mortgage Co. of Indiana*, 589 F.2d 164, 169 (5th Cir.1979).[5]

Defendants argue that the reasoning of a California case, *Postal Instant Press, Inc. v. Sealy*, 43 Cal.App.4th 1704, 51 Cal. Rptr.2d 365 (1996) is more applicable in this case. In *Postal Instant Press, Inc.* the Court did not allow an award of lost profits to a franchisor, as the franchisee only failed to make royalty and advertising payments, and this did not prevent the franchisor from receiving royalties on future revenues. The Court reasoned that what actually prevented the franchisor from receiving future revenues was its decision to terminate the franchise agreements.

■ Reliance on the *Postal Instant Press, Inc.* case is misplaced, as the Franchise Agreements contain a Florida choice of law provision. *See* Exhibit A, Section 18(C). Under Florida law, a non-breaching party can receive lost profits. *Born v. Goldstein*, 450 So.2d 262, 264 (Fla. 5th DCA 1984); *Adams v. Dreyfus Interstate Dev. Corp.*, 352 So.2d 76 (Fla. 4th DCA 1977). In order to recover, BKC must show (1) a breach of contract occurred, (2) BKC sustained a loss as a proximate result of the breach, (3) the loss was or should have been within the reasonable contemplation of the parties, and (4) the alleged loss is not remote, contingent, or conjectural and the damages were reasonably certain. *Frenz Enter., Inc. v. Port Everglades*, 746 So.2d 498, 504 (Fla. 4th DCA 1999).

■ The Court finds that BKC has not satisfied this standard. BKC has shown that Defendants committed a breach of the contract by failing to remit payments, but it has not demonstrated that its total requested award of lost profits resulted from Defendants' breach. BKC is certainly entitled to its lost royalty and rent payments, but Defendants' failure to pay these amounts did not proximately cause BKC's loss. BKC decided to terminate the Franchise Agreements due to Defendants' breach, and it was this action that has caused the loss of future profits.

The Court finds the instant situation distinguishable from that presented to the undersigned in *Burger King Corp. v.*

---

**5.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

 

*Barnes.* In *Barnes,* the franchisee ("Barnes") abandoned the BK restaurant. Barnes notified BKC in a June 8, 1995 letter that he would be closing the franchise and ceasing performance under the Franchise Agreement. Accordingly, the franchisee's action did proximately cause BKC's loss of future profits. *See Douglass Fertilizers & Chem., Inc. v. McClung Landscaping, Inc.,* 459 So.2d 335, 336 (Fla. 5th DCA 1984) ("[L]ost profits are allowed only if the loss was caused by the defendant's wrongful act and the profits were reasonably within the contemplation of the defaulting party at the time the contract was entered into").

In the alternative, BKC requests an award of lost profits on the grounds that Defendants anticipatorily breached the Franchise Agreements. BKC did not include a claim for anticipatory repudiation in its Complaint however, and cannot now seek damages for a cause of action which it did not originally assert. The Court cannot award damages on claims outside of the pleadings. *See Hooters of Am., Inc. v. Carolina Wings, Inc.,* 655 So.2d 1231, 1233 (Fla. 1st DCA 1995).

Accordingly, the Court finds that Plaintiff is entitled to recovery of $860,676.84 for amounts past due under the Franchise Agreements and Leases.[6]

## II. *CONCLUSION*

Based on the foregoing, it is ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment (DE# 17) be GRANTED IN PART and DENIED IN PART. Burger King Corporation is awarded the sum of $860,676.84 as damages for Defendants' breach of the Franchise Agreements and Leases. Final judgment in favor of Burger King Corporation will be entered accordingly.

6. Declaration of Julian Gomez (Manager of Franchise Finance at BKC), Exhibit F of

The Clerk of the Court is directed to mark this case as CLOSED. All pending motions not otherwise ruled upon are DENIED AS MOOT.

Plaintiff's Appendix to BKC's Motion for Summary Judgment.