[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 24-11240

Non-Argument Calendar

————————————————

NON PERFORMING LLC,
OSLO GROUP LLC,

                                                            Plaintiffs-Appellees,

*versus*

JOHN E. TYRE,
a.k.a. John Edwin Tyre II,
KAY TYRE,
a.k.a. Lanita K. Tyre,

                                                            Defendants-Appellants,

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:22-cv-01012-BJD-PDB

_____

Before JORDAN, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

After John E. Tyre and Kay Tyre defaulted on a mortgage loan, creditors sought foreclosure. Following years of litigation, Non Performing LLC and Oslo Group LLC, appellees, became assignees to the mortgage, and moved for summary judgment in a foreclosure action in federal district court. The court granted their motion and entered a final judgment of foreclosure. The Tyres appealed from that judgment. For the reasons that follow, we affirm.

**I.**

In July 2005, the Tyres and Bank of America, a predecessor in interest to the appellees, entered a mortgage agreement that secured a credit agreement allowing the Tyres to borrow up to $128,700. The mortgage and loan were assigned several times, and ultimately to Non Performing and Oslo Group in 2023.

The mortgage contained a discrepancy: it stated that the encumbered real property was 348 Southwest Tall Pine Court, but gave a property description aligning with another property the Tyres owned, 8149 Southwest State Road 247.

To fix the discrepancy, Bank of America unilaterally filed a "Corrective Mortgage" in December 2005. That mortgage changed the description of the encumbered property to match the stated address, 348 Southwest Tall Pine Court. The bank simultaneously filed a release of the lien on the other address.

The Tyres defaulted on their mortgage loan in 2015. Wilmington Savings Fund Society—to whom the bank had assigned the mortgage—brought an action for foreclosure in Florida state court. The state court found for the Tyres. It concluded that the original mortgage's description of the encumbered property would not permit a surveyor to locate it, and that the Corrective Mortgage was invalid because the bank could not execute it without notifying the Tyres. The court explained that the original mortgage specified other ways of alteration: as one route, the bank could have requested the Tyres to execute the Corrective Mortgage, and—if the Tyres refused—could then execute it as their attorney-in-fact.

The next mortgage assignee—FLA Mortgage Capital 2, LLC—took that route. To fix the original mortgage, Capital 2 requested the Tyres execute an "Amended Mortgage," which described the encumbered property so as to match the Pine Court address. Capital 2 informed the Tyres that if they refused, it could execute the Amended Mortgage on their behalf based on authority granted by an "Attorney-in-Fact" provision in the original mortgage. The Tyres refused. Capital 2 then executed the Amended

Mortgage, and assigned it to FLA Mortgage Capital Corporation, which brought a foreclosure action in federal district court.

Non Performing and Oslo Group, the next assignees, substituted in as plaintiffs and moved for summary judgment. The district court granted summary judgment in their favor, holding that they established the four elements of a foreclosure action—an agreement, a default, an acceleration of the amount due, and the amount due. *See Nationstar Mortg., LLC v. McDaniel*, 288 So. 3d 1235, 1236 (Fla. Dist. Ct. App. 2020). The court entered a final judgment of foreclosure, and the Tyres appealed from that judgment.

## II.

We review an order granting summary judgment *de novo*, taking all the facts in the record and drawing all reasonable inferences in the light most favorable to the non-moving party. *Peppers v. Cobb County*, 835 F.3d 1289, 1295 (11th Cir. 2016). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

On appeal, the Tyres make four challenges against the district court's grant of summary judgment. First, they argue that a latent ambiguity in the original mortgage precluded summary judgment. Second, they argue that the Amended Mortgage was not a valid agreement because Capital 2 was not authorized to execute it. Third, they argue that Non Performing and Oslo Group did not

sufficiently prove that the Tyres owed them the amount the court held was owed. Fourth, they argue that the court granted a money judgment not prayed for in the foreclosure complaint. Each challenge fails.

*A.*

The Tyres first contend that a "latent ambiguity" in the original mortgage precluded summary judgment. We disagree, even assuming that the original mortgage contained a latent ambiguity as to which property was encumbered.

"A federal court sitting in diversity jurisdiction applies the substantive law of the forum state"—here, Florida—"alongside federal procedural law." *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 989 (11th Cir. 2020). Under Federal Rule of Civil Procedure 56(a), summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A fact is material if it has the potential of affect[ing] the outcome of the case. And to raise a genuine dispute, the nonmoving party must point to enough evidence that a reasonable jury could return a verdict for [him]." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation and internal marks omitted).

The Tyres have not explained why a latent ambiguity in the original mortgage formed a genuine dispute over a material fact. Start with materiality. The district court granted summary judgment on a foreclosure action, which requires a plaintiff to establish four elements: (1) a mortgage agreement; (2) default; (3)

acceleration; and (4) amount due. *Bank of Am., N.A. v. Green Emerald Homes, LLC*, 292 So. 3d 513 (Fla. Dist. Ct. App. 2020). The mortgage that the court concluded satisfied the first foreclosure element was the Amended Mortgage, and *that* mortgage unambiguously identified 348 Southwest Tall Pine Court as the collateral property. The Tyres have not explained why latent ambiguity in the *original* mortgage affected any element of the foreclosure action.

Nor have the Tyres raised a *genuine* dispute over which property the original mortgage encumbered. The district court pointed to several facts establishing that the parties to that mortgage intended the Pine Court property, not the State Road property, to be encumbered. The original mortgage mentioned the Pine Court address three times, and stated that "Grantor mortgages to Lender all of Grantor's right, title and interest in" the "Real Property . . . commonly known as" that address. The credit agreement secured by the original mortgage listed that address as the Tyres' address. And at the time of the original mortgage's formation, the credit limit, $128,700, was much closer to the value of the Pine Court property—$106,661—than to the value of the State Road property, $14,163. The Tyres have not pointed to any contrary evidence from which a reasonable jury could conclude that the State Road property was intended as collateral. *See Shaw*, 884 F.3d at 1098.

The Tyres rely on Florida cases stating that "when an agreement contains a latent ambiguity . . . the issue of the correct interpretation of the agreement is an issue of fact which precludes summary judgment." *Mac-Gray Servs., Inc. v. Savannah Assocs. of*

*Sarasota, LLC*, 915 So. 2d 657, 659–60 (Fla. Dist. Ct. App. 2005) (cleaned up). *See Wheeler v. Wheeler, Erwin & Fountain, P.A.*, 964 So. 2d 745, 749 (Fla. Dist. Ct. App. 2007) ("Only when an ambiguity exists requiring resolution by resort to extrinsic evidence is a question of fact presented."). But federal procedural law governs in this case, *see Oppenheim*, 981 F.3d at 989, and we have found no federal decision establishing that a resort to parol evidence—including undisputed parol evidence, as we have here—inherently creates a "genuine dispute as to [a] material fact," Fed. R. Civ. P. 56(a). *Cf. Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1323–24 (11th Cir. 1982) ("federal law controls questions of the sufficiency of the evidence in state law claims.").

And in any event, the Florida cases the Tyres cite do not establish that latent ambiguities requiring parol evidence preclude summary judgment even when no genuine dispute over a material fact exists. In *Mac-Gray*, the latent ambiguity in a lease addendum was unresolved by extraneous evidence—*i.e.*, a genuine dispute existed—and affected a lease's termination date, the dispute at summary judgment. *See* 915 So. 2d at 658–60. In *Wheeler*, the alleged ambiguity, if extant, would determine whether one party had to pay deferred compensation benefits to another—again, the ultimate dispute at summary judgment. *See* 964 So. 2d at 750–51. Here, the Tyres have not explained why the question, which property did the original mortgage encumber, was a material and genuine issue.

*B.*

The Tyres next argue that a genuine issue of material fact exists as to whether the Amended Mortgage was a valid agreement—*i.e.*, whether the first element of the foreclosure action was established. *See Green Emerald Homes*, 292 So. 3d 513. They contend that the Amended Mortgage was invalid because the original mortgage did not authorize Capital 2 to execute the amended one. The Tyres are incorrect.

We turn to the original mortgage, which the parties do not dispute governed the scope of Capital 2's authority to execute an amended mortgage. The original mortgage contained a "Further Assurances" and an "Attorney-in-Fact" provision, quoted in pertinent part below:

> **Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute, and deliver, . . . any and all such mortgages . . . and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve [1] Grantor's obligations under the Credit Agreement, this Mortgage, and the Related Documents, and [2] the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor.

> **Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of the Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

These provisions permitted Capital 2 to act as the Tyres' attorney-in-fact and execute the Amended Mortgage. Capital 2 initially asked the Tyres to execute the Amended Mortgage, which changed the legal description of the encumbered property to match the Pine Court address stated in the original mortgage and in the credit agreement. So, consistent with the Further Assurances provision, Capital 2 requested the Tyres to "execute . . . [a] mortgage[ ] . . . [that] . . . in the sole opinion of Lender," Capital 2, was "necessary or desirable in order to effectuate, complete, [or] perfect" the Tyres' obligations "under the Credit Agreement [and the original] Mortgage." Under the Further Assurances provision, the Tyres were obliged to fulfill that request.

Once the Tyres refused to execute the Amended Mortgage—*i.e.*, once the "Grantor fail[ed] to do" an action listed in the Further Assurances paragraph—Capital 2 was authorized by the Attorney-in-Fact provision to execute that mortgage "for and in the

name of the" Tyres. And under the Attorney-in-Fact provision, the Tyres "irrevocably appoint[ed]" Capital 2 as their "attorney-in-fact for the purpose of . . . executing . . . things as may be necessary or desirable" in Capital 2's "sole opinion" to "accomplish the matters referred to in the" Further Assurances paragraph. No one disputes that Capital 2 found it necessary or desirable to execute the Amended Mortgage to effectuate, complete or perfect the Tyres' obligations under the credit agreement and original mortgage. So, the original mortgage authorized Capital 2 to execute the Amended Mortgage as the Tyres' attorney-in-fact.

The Tyres make three arguments that each fall short. First, they argue that Capital 2 needed their written consent to execute the Amended Mortgage, because a change to the original mortgage's property description was governed by that mortgage's "Amendments" provision, which required written consent from anyone "bound or obligated" by the change. But though the Tyres were so bound, this argument ignores the effect of the Further Assurances and Attorney-in-Fact provisions. After the Tyres refused Capital 2's request to execute the Amended Mortgage, those two provisions authorized Capital 2 to act as the Tyres' attorney-in-fact—a "legal agent" "designated to transact business for another." Attorney-in-Fact, Attorney, *Black's Law Dictionary* (8th ed. 2004). When Capital 2 then executed that mortgage as the Tyres' attorney-in-fact, Capital 2's written consent functioned as theirs.

Second, the Tyres contend that Capital 2 could only acquire an attorney-in-fact power if the Tyres refused to complete their

obligations under the original mortgage; executing the Amended Mortgage, the Tyres contend, was not one of those obligations. We disagree. Under the original mortgage's Further Assurances paragraph, the Tyres were obliged to execute mortgages that—"in the sole opinion of" Capital 2—were "necessary or desirable in order to effectuate, complete, perfect, continue, or preserve" their "obligations under the Credit Agreement" and original mortgage. Here, Capital 2 reasonably found it necessary for the Tyres to execute the Amended Mortgage—one whose property description now matched the address stated in the credit agreement and original mortgage—so as to effectuate, complete, or perfect the Tyres' obligations under those documents.

Third, the Tyres argue that they revoked any power of attorney that Capital 2 possessed, in a letter they had sent Capital 2 after it requested that they execute the Amended Mortgage. But this argument runs against the plain text of the original mortgage's Attorney-in-Fact provision, which provided that if the grantor refused—as the Tyres did—to abide by the lender's request, they "irrevocably appoint[ed]" the lender to be their attorney-in-fact.

The Tyres seek to circumvent the irrevocability language, by pointing to a provision of the Florida Power of Attorney Act—section 709.2110 of the Florida Statutes. Under that section,"[a] principal may revoke a power of attorney by expressing the revocation in a subsequently executed power of attorney or other writing signed by the principal." Fla. Stat. § 709.2110(1) (2011). But even assuming that this section conflicts with and supersedes the

mortgage's irrevocability language, the Power of Attorney Act does not apply to a "power [of attorney] to the extent it is coupled with an interest in the subject of the power, including a power given to or for the benefit of a creditor in connection with a credit transaction." *Id.* § 709.2103(3).

Here, Capital 2's power of attorney was irrevocable because it was coupled with Capital 2's mortgage—"an interest in real property that secures a creditor's right to repayment." *Can Fin., LLC v. Krazmien*, 253 So. 3d 8, 10 (Fla. Dist. Ct. App. 2018) (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991)). The Tyres argue that Capital 2 lacked an interest "in the subject of the power"—the Pine Court property—because the original mortgage failed to consistently describe that property. But as explained above, undisputed evidence established that the parties to that mortgage intended the Pine Court property to be encumbered, and the Tyres have not raised a genuine dispute over this fact. The original mortgage thus created an interest in the Pine Court property, and was coupled with the power of attorney that Capital 2 possessed to effectuate, complete or perfect the Tyres' obligations under that mortgage. Accordingly, section 709.2110 does not apply, and Capital 2 was authorized by the original mortgage to execute the amended one.

## C.

Third, the Tyres argue that the evidence was insufficient to support the amount the district court determined they owed to Non Performing and Oslo Group. We disagree.

The district court calculated that the amount due was $256,466.42, by aggregating several numbers: an unpaid principal of $128,669.74; escrow advances totaling $10,843.35; a recoverable balance of $70,324.00; and interest totaling $46,629.33. The Tyres have not raised a genuine dispute over these numbers. *See Shaw*, 884 F.3d at 1098.

First, to the extent the Tyres challenge the escrow advances and recoverable balance amounts, their challenge fails. These numbers are supported by the declaration of Simon Dov, the manager of Non Performing, and corroborated by payment records attached as exhibits to Dov's declaration. The Tyres argue the payment records were tainted by a statement on one of the pages stating that "[t]hese figures are subject to final verification by the Noteholder." But Dov's declaration attested under penalty of perjury that "[t]rue and correct copies of the payment history" were attached, and the Tyres provide no alternative calculations, let alone evidence thereof, suggesting that the payment records were inaccurate.

Second, the interest amount is supported by Dov's declaration, by the credit agreement—which provides for the payment of interest at a rate of 4.5%, and by the Tyres' admission of default in their answer to the foreclosure complaint. The Tyres argue that a page in the payment records attached to Dov's declaration says they owed "0.00" in interest, but the page makes no such statement, and if anything, lists a non-zero interest rate and further establishes that the Tyres defaulted in 2015.

Third, the Tyres argue that the amount due improperly includes attorneys' fees. But both the original mortgage and Amended Mortgage plainly provide that attorneys' fees incurred by the Lender "shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid."

All of this evidence supports the district court's calculations, and the Tyres offer no evidence to suggest that a reasonable jury might find those calculations inaccurate or accept different ones. The Tyres fail to raise a genuine dispute of material fact. *See Shaw*, 884 F.3d at 1098.

### D.

The Tyres finally argue that the district court erred by ordering a clerk to enter a money judgment against the Tyres even though a money judgment was not prayed for in the foreclosure complaint. *See generally Burger King Corp v. Hinton*, 203 F. Supp. 2d 1357, 1367 (S.D. Fla 2002) (declining to award damages that a cause of action did not originally assert).

The procedural history reveals that the Tyres are mistaken. The foreclosure complaint requested that the court determine an amount due, and direct foreclosure if the Tyres did not immediately pay that amount. That is what the court ultimately did. In its order denying summary judgment, the court directed the clerk to enter judgment in the amount the court calculated was owed by the Tyres, and directed Non Performing and Oslo Group to submit a proposed final judgment of foreclosure. The clerk entered the

directed judgment in the amount of $256,466.42 before the appellees submitted a proposal, and the Tyres appealed from that judgment. On April 4, 2024, we dismissed the appeal as interlocutory, reasoning that the district court had "not yet entered [a final] judgment [of foreclosure] or otherwise foreclosed the plaintiffs' security interest." *Fla Mortg. Cap. Corp. v. Tyre*, No. 24-10133, 2024 WL 1460313, at *1 (11th Cir. Apr. 4, 2024). The district court entered its final judgment of foreclosure and order of sale, listing $256,466.42 as the amount due, on April 2, 2024.

Though minor error existed (our dismissal on interlocutory grounds was issued two days after the district court entered its final judgment), the procedural history reveals that the district court did not ultimately award a money judgment separate from its judgment of foreclosure.

## IV.

The judgment of the district court is **AFFIRMED.**