THOMAS, J.,
DISSENTING.
I respectfully dissent from the majority’s decision to reverse the trial court’s summary judgment in favor of Appellees InfoPro and Charles Brasfeild, with respect to ADC’s claim against them for tortious interference with a contract and advantageous business relationship.
ADC’s damages claim is based on the assumption that, had HX5 teamed together with it rather than InfoPro, their joint bid would also have been successful. This is pure speculation and, as I discuss in my opinion concurring in part and dissenting in part in the companion case of Alpha Data Corp. v. HX5, L.L.C., etc., et al., — So.3d -, No. 1D12-2885 (Fla. 1st DCA October 18, 2013), “concerning damages for anticipated loss of profits in a commercial enterprise, the general rule is that such damages are too speculative and dependent upon changing circumstances to warrant a judgment for their loss.” Fla. Outdoor, Inc. v. Stewart, 318 So.2d 414, 415 (Fla. 2d DCA 1975). Thus, because any damages alleged by ADC for the interference alleged here are purely speculative, ADC’s claim must fail, and the trial court properly granted summary judgment.
Furthermore, “within the[ ] elements [of tortious interference] is the requirement that the plaintiff establish that the defendant’s conduct caused or induced the breach that resulted in the plaintiffs damages.” Chicago Title Ins. Co. v. Alday- *156 Donalson Title Co. of Florida, Inc., 832 So.2d 810, 814 (Fla. 2d DCA 2002). As discussed in my opinion in the companion case, the record demonstrates that, even before InfoPro contacted HX5 about pursuing the expiring service contract, relations between ADC and HX5 had been deteriorating. Thus, the record fails to support ADC’s position that it was Info-Pro’s overture that led to any “breach” between the two companies. Nor, if the two companies were in fact drifting apart, could InfoPro’s overture be accurately characterized as “interfering” with the relationship.
For a party to establish a tortious interference claim, “[t]here must be a relationship in existence at the time of any alleged interference.” Bernstein v. True, 636 So.2d 1364, 1366 (Fla. 4th DCA 1994). As in Bernstein, “[tjhere is nothing to indicate that [InfoPro’s] involvement in the second agreement caused the [alleged] first one to fall apart.” Id. at 1367. “In considering the element of causation, Florida courts have held that the plaintiff must plead and prove that the defendant manifested a specific intent to interfere with the business relationship.” Chicago Title Ins. Co., 832 So.2d at 814. Here, there was no evidence that anyone at InfoPro had any specific intent to interfere with the alleged relationship or agreement between ADC and HX5 in general, or with respect to the HUBZone contract in particular.
For the foregoing reason, I would affirm the trial court’s summary judgment and award of costs.